# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-KA-00091-SCT

*CERDICK D. GARY a/k/a CEDRICK D. GARY a/k/a CEDRICK DEESHAWN GARY a/k/a CEDRICK DESHAWN GARY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/18/1994 |
| TRIAL JUDGE: | HON. RICHARD W. McKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS MICHAEL REED |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | E. LINDSAY CARTER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART, VACATED IN PART, AND REMANDED - 06/01/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/22/2000 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This matter came before us from the Forrest County Circuit Court. Cedrick D. Gary was convicted of armed robbery and sentenced to 45 years in the custody of the Mississippi Department of Corrections.

## STATEMENT OF FACTS

¶2. On the night of March 21, 1994, Phillip Rhodes ("Rhodes") and James McBeth ("McBeth") were riding around Hattiesburg, Mississippi, in a 1985 Chevrolet pickup truck that belonged to Rhodes's father. At the intersection of North 21st Street and Quinn Street, Rhodes and McBeth were waived down by Terry Robertson[(1)] ("Robertson") and Cedrick D. Gary ("Gary"), two former school friends. Robertson and Gary requested a ride and were allowed to enter the truck with Rhodes and McBeth.

¶3. Since the facts of the case become contradictory at this point, it is necessary to address both sides separately. According to the testimony of both Rhodes and McBeth, Robertson and Gary entered the

truck, and the four were seated from driver side to passenger side as follows: McBeth (driver), Robertson, Gary, and Rhodes. Shortly thereafter, Robertson put a .22 caliber handgun to McBeth's head and ordered him to stop the truck. McBeth stopped the truck, put it in park, and sat there. Robertson then reached over, turned off the ignition, and instructed Rhodes and McBeth to exit the vehicle. According to the testimony of Rhodes and McBeth, McBeth and Robertson exited on the driver's side of the vehicle, while Rhodes and Gary exited on the passenger's side.

¶4. McBeth testified that, after exiting the driver's side, Robertson continued to point the gun at him and demanded money. Rhodes testified that Gary, after exiting on the passenger's side, demanded money from him as well. Rhodes testified that he gave Gary the money, and Gary then hit him with a closed fist twice in the head and once in the shoulder. McBeth corroborated Rhodes's testimony by saying he witnessed Gary hit Rhodes three times. McBeth further testified that when Gary began hitting Rhodes, Robertson "turned to watch," and McBeth was able to hide his money in his sock. Robertson took $2 off the dashboard of the truck.

¶5. Additionally, McBeth testified that Robertson then walked to the passenger side, exchanged words with Rhodes, walked back to the driver's side, pointed the gun at McBeth, and ordered everyone to get back into the truck. Rhodes refused and told McBeth to run. According to the testimony of both Rhodes and McBeth, after they began running Robertson and Gary jumped in the truck. A shot was fired from the passenger side of the truck, and both Rhodes and McBeth testified that Gary was on the passenger side. Rhodes and McBeth ran to Rhodes's house on Melba Street and called the police. Officer Ted Socha was summoned, and the truck was found on 25th Avenue shortly thereafter.

¶6. Gary's testimony is substantially different. According to Gary, Robertson and Gary entered the truck, and the four were seated from driver side to passenger side as follows: Rhodes (driver), Robertson, Gary, and McBeth. Gary testified that Robertson pulled out a .22 caliber handgun and told Rhodes to turn off the truck. Gary stated that Rhodes and Robertson exited on the driver's side of the vehicle, while he and McBeth exited on the passenger's side. Gary testified that upon exiting the truck Robertson placed the gun to Rhodes's head and demanded his money.[2] Gary further testified that Rhodes initially did not give Robertson the money and asked him why he was doing this. Gary then testified that he walked over to the driver's side of the vehicle where Robertson and Rhodes were located. Gary contends that he punched Rhodes in the head once in order to "save him." Gary asserts that he was trying to save Rhodes's life by punching him in the head "so he would be quiet." Rhodes then gave up the money. According to Gary's testimony, he took no money from either McBeth or Rhodes, and only Robertson received the money.

¶7. Rhodes and McBeth fled. Gary testified that he drove the truck and that Robertson was on the passenger side. As Gary drove, "[Robertson] stuck the gun out the window and fired a shot." Gary testified that he stopped the truck three to four blocks later on 25th Avenue and ran to his house on Third Street. Gary argues that he was only following Robertson's directions because he was "scared" and "had never seen him in that type of anger before." Gary contends that he did not know of the gun prior to the event, never touched the gun, and only took the truck under the direction of Robertson.

¶8. On July 12, 1994, Gary was convicted in the Circuit Court of Forrest County on a charge of armed robbery and was sentenced to a term of 45 years in the custody of the Mississippi Department of Corrections. The personal property alleged to have been taken by Robertson and Gary was $7 in U.S. currency and a 1985 Chevrolet Silverado Truck. On August 1, 1994, a Motion for New Trial and /or

J.N.O.V. was filed. This motion was heard and denied by the circuit court on January 8, 1998. A Notice of Appeal was filed on January 20, 1998, but no Brief of the Appellant was filed. Consequently, substitute counsel was appointed, and this appeal was perfected to this Court.

<u>ANALYSIS</u>

## 1) WHETHER THE COURT ERRED IN FAILING TO SUSTAIN THE BATSON CHALLENGE RAISED BY THE DEFENDANT AT TRIAL

¶9. In ***Batson v. Kentucky***, 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) the Court held that a defendant may establish a prima facie case of purposeful discrimination during jury selection based solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish the prima facie case under ***Batson***, a defendant must show the following:

> [He] is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice which permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that the facts and other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Walters v. State*, 720 So. 2d 856, 865 (Miss. 1998). "The burden then shifts to the State to come forward with a race-neutral explanation for challenging the jurors." ***Mack v. State***, 650 So. 2d 1289, 1296 (Miss. 1994). Finally, the trial court must determine whether the objecting party has met its burden to prove that there has been purposeful discrimination in the exercise of the peremptory challenge. *Walters*, 720 So.2d at 865.

¶10. "We accord great deference to the trial court in determining whether the offered explanation under the unique circumstances of the case is truly a race-neutral reason." *Id.* "[A] trial judge's factual findings relative to a prosecutor's use of peremptory challenges on minority persons ... will not be reversed unless they appear clearly erroneous or against the overwhelming weight of the evidence." ***Stewart v. State***, 662 So. 2d 552, 558 (Miss. 1995). "This perspective is wholly consistent with our unflagging support of the trial court as the proper forum for resolution of factual controversies." ***Id.***

¶11. Gary contends that the State used its peremptory challenges in an unconstitutional manner, specifically alleging that the State had "effectively disenfranchised members of the black race" since 8 of the State's 13 peremptory challenges were against black veniremen. Gary also relies on ***Hatten v. State***, 628 So. 2d 294 (Miss. 1993), and asserts that the trial court failed to make an on-the-record factual finding that the explanations offered by the State were race neutral. After the State provided reasons for its peremptory challenges, the trial judge made the following statement:

> With the exception of the gentlemen who is the accountant I would say under the <u>Batson</u> decision that I don't think any of these, both for the State or the defense, were stricken along racial lines or to constitute a jury that is racially consistent...

¶12. Gary argues that a mere conclusive statement made by the trial court as to whether it finds a discriminatory purpose or race neutrality is not the specific finding required by ***Hatten***. "We place our trust in the trial judges to determine whether or not a discriminatory motive underlies the prosecutor's articulated

reasons... [A trial judge], in determining which explanations are sufficiently race-neutral and which are not, should have an equally 'clear and reasonably specific' explanation for his ruling." *Id.* at 299. Furthermore, *Hatten* requires "an on the record, factual determination, of the *merits* of the reasons cited by the State." *Id.* at 298. Mere broad conclusions at the end of the *Batson* process will not suffice. However, where a trial judge fails to elucidate such a specific explanation for each race neutral reason given, we will not remand the case for that *Batson*-related purpose alone. This Court is fully capable of balancing the *Batson* factors in cases such as this one. Continued remand of such cases only wastes the trial court's limited resources and acts to further delay justice.

¶13. Before moving to a review of those race-neutral reasons, we point out that the record clearly illustrates that Gary's counsel offered no rebuttal to the State's explanations for its peremptory strikes. In *Bush v. State*, 585 So.2d 1262 (Miss. 1991), we stated that if a racially neutral explanation is offered the defendant can rebut the explanation. *Id*. at 1268. If the defendant makes no rebuttal, the trial judge must base his decision only on the explanations given by the State. *Id*. On appellate review this decision is given great deference, and we will reverse only when such decisions are clearly erroneous. *Lockett v. State*, 517 So.2d 1346, 1349-50 (Miss. 1987). Therefore, we review the trial court's ruling on the strikes under a harmless error analysis.

¶14. The record shows that the State used eight (8) of its thirteen (13) strikes to dismiss black venire members. The State offered race neutral reasons for all eight (8) strikes. As noted previously, Gary did not rebut any of these reasons. Only now does he raise objections to the probity of these strikes. Nevertheless, a review of the State's explanations clearly illustrates that the dismissal of all eight were, in fact, done for race-neutral reasons. The first was excluded for having written bad checks. The second was excluded for inattentiveness. The third did not complete the juror questionnaire. The fourth was excluded because her daughter-in-law is employed by the district attorney's office. The fifth was excluded for inattentiveness. The sixth was excluded because he failed to disclose that he had been a victim of a crime. The seventh failed to sign the juror questionnaire. Finally, the eighth failed to complete the juror questionnaire. We have previously held all of these explanations to be race-neutral on previous occasions.[3]

¶15. Therefore, we find no error in the trial court's *Batson* ruling. Gary's first assignment of error is without merit.

## 2) WHETHER THE JURY VERDICT IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE PRODUCED AT TRIAL

¶16. Gary asserts in his brief that "he was merely a bystander and was unaware of Robertson's intent to rob the victims." Consequently, Gary contends that the evidence produced at trial was "clearly insufficient to support a verdict of guilty." As such, Gary requests this Court reverse and remand his case for a new trial.

¶17. As distinguished from a judgment notwithstanding the verdict, a motion for a new trial asks that the jury's guilty verdict be vacated on grounds related to the weight, not sufficiency, of the evidence presented at trial. *May v. State*, 460 So. 2d 778, 781 (Miss. 1984). "We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983). "Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system." *Id.* "The Supreme Court will reverse the lower court's denial of a motion for new trial only if, by denying, the court abused its discretion." *Gleeton v. State*, 716 So. 2d 1083,1089 (Miss. 1998).

¶18. Furthermore, we are to consider all evidence in the light most favorable to the prosecution, accepting all credible evidence consistent with the verdict as true. *Ashford v. State*, 583 So. 2d 1279,1281 (Miss. 1991). We must also accept all reasonable inferences drawn from the evidence that are consistent with the verdict. *Id.* In *Ashford*, this Court held:

> [O]nce the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.

*Id.* "Matters regarding the weight and credibility of evidence must be resolved by the jury." *Fisher v. State*, 481 So. 2d 203, 212 (Miss. 1985).

¶19. Although the testimony presented by both sides in this case is very contradictory, the State provided ample evidence to support the jury's verdict. On April 6, 1994, Gary was indicted for the offense of armed robbery. Jury instruction S-1 was given at trial and defined the offense as follows:

> The Court instructs the jury that if you find from the evidence in this case, beyond a reasonable doubt, that Cedrick Deshawn Gary, ...did unlawfully, wilfully, and feloniously commit an assault upon the person of one James McBeth and Phillip Rhodes, with a certain deadly weapon, to wit: a .22 caliber pistol, by threatening the said James McBeth and Phillip Rhodes with said deadly weapon, and did feloniously put the said James McBeth and Phillip Rhodes in fear of immediate bodily injury to their persons, by the exhibition of said deadly weapon as aforesaid, with the unlawful and felonious intent to steal, did unlawfully, wilfully and feloniously take, steal and carry away from the person of and in the presence of and against the will of the said James McBeth and Phillip Rhodes, certain personal property, to wit: a 1985 Chevy Silverado truck,...and $7.00 U.S. currency, and of the personal property of James McBeth and Phillip Rhodes then you shall find the defendant, Cedrick Deshawn Gary, guilty of the crime of Armed Robbery.

Additionally, the Court gave Instruction S-3 which read as follows:

> An "accomplice" is someone who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of a crime.

> If you find from the evidence in this case beyond a reasonable doubt that Cedrick Deshawn Gary, on the 21st day of March, 1994, did knowingly, voluntarily and with common intent with Terry Robertson, unite in the commission of the crime of Armed Robbery, then you shall find the defendant guilty.

¶20. Gary contends that because he did not actually possess the gun, he should not be held accountable for armed robbery. Both sides agree that Robertson was the person in possession of the gun at the time the robbery began to take place. Both sides also agree that Gary never held or pointed the gun at Rhodes or McBeth while demanding their money. It is disputed, however, who actually shot the gun as Robertson and Gary sped away in the stolen truck. According to the testimony of both Rhodes and McBeth, as they began to run they noticed Gary entering the truck on the passenger side and do not believe that Gary and Robertson had time to switch sides before the shot was fired.[4] Gary, however, asserts that he was driving the truck and that Robertson was the person who actually fired the shot.

¶21. Gary's argument also ignores the concept of accomplice liability as set forth in Instruction S-3. Gary admits he hit Rhodes once to "save Rhodes's life", although the number of times he did so is disputed. Gary himself testified that he hit Rhodes *prior* to Rhodes's giving up the money.[5] No where in the record is there any indication that Robertson "forced" Gary to participate in this robbery, nor is there any testimony that Rhodes ever held the gun on Gary. Gary asserts that he was scared and simply "following instructions." However, the record makes no mention of Gary ever questioning what Robertson told him to do. Gary never voiced any objection to the robbery, did not try to flee, and proceeded, according to his own testimony, to steal the truck.

¶22. Where there was contradictory evidence at trial necessitating a factual determination, the Court has held the lower court did not abuse its discretion in refusing to grant the appellant a new trial. *Crenshaw v. State*, 520 So. 2d 131, 135 (Miss. 1988). In the present case, the jury's verdict was not so contrary to the overwhelming weight of evidence as to constitute an unconscionable injustice. "A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict." *Groseclose,* 440 So.2d at 300. "It is enough that the conflicting evidence presented a factual dispute for jury resolution." *Id.* It was quite possible and reasonable for the jury, upon the evidence given it at trial, to ultimately conclude that Gary was an accomplice and therefore guilty of armed robbery. The evidence presented was in conflict, the jury resolved the dispute, and this Court will not disturb the trial court's denial of Gary's motion for a new trial.

### 3) WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE A JURY INSTRUCTION OF ACCESSORY AFTER THE FACT

¶23. In the present case, Gary submitted an instruction regarding accessory after the fact. Instruction D-14 read as follows:

> The Court instructs the jury that an accessory after the fact is one who conceals, receives, relieves, aids or assists any person, knowing that such person has committed a felony, with intent to enable such a person to escape or avoid arrest, trial, conviction or punishment, after the commission of such felony.

> The Court further instructs the jury that CEDRICK GARY is not required to establish that he was an accessory after the fact to your satisfaction, but if the evidence or lack of evidence in this case raises in the minds of the jury reasonable doubt as to whether the Defendant was only an accessory after the fact, then, in that event, you must give him the benefit of the doubt and may not convict CEDRICK GARY of the crime of armed robbery, and therefore, it would be your sworn duty to return a verdict of not guilty.

When this instruction was submitted, the State objected by stating there was "no evidence that he was an accessory after the fact...." Gary argued that the instruction was a valid instruction under *Gangl v. State*, 539 So. 2d 132 (Miss. 1989). After hearing argument by counsel, the court ruled as follows:

> Let me say that I think that obviously that the instruction is a valid instruction as has been perceived by our Supreme Court, but I think that you also have to consider the factual situation, **and in this particular case there are insufficient factual situations before this jury for this court to grant this particular instruction.**

(emphasis added). Furthermore, the State does not challenge the validity of the instruction itself, but asserts that its use here would have been improper because no evidence was provided at trial to support the instruction.

¶24. When reviewing challenges to jury instructions, whether granted or denied by the trial court, this Court applies the following standard:

> Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, **or is without foundation in the evidence.**

*Heidel v. State*, 587 So. 2d 835, 842 (Miss. 1991)(citations and footnote omitted)(emphasis added). Furthermore, the standard for determining whether an evidentiary basis exists is as follows:

> [A] lesser included offense instruction should be granted unless the trial judge - - and ultimately this Court - - can say, taking the evidence in the light most favorable to the accused, and considering all reasonable references which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).

*Harper v. State*, 478 So. 2d 1017, 1021 (Miss. 1985). If a rational or a reasonable jury could have found Gary not guilty of the principal offense charged in the indictment yet guilty of the lesser-included offense, then the lesser-included offense instruction should have been granted. *Evans v. State*, 725 So.2d 613, 664 (Miss. 1997).

¶25. In support of his assertion that this instruction should have been given, Gary relies on *Hester v. State*, 602 So. 2d 869 (Miss. 1992), and specifically cites the following in his brief:

> Even though based on meager evidence and highly unlikely, a defendant is entitled to have every legal defense he asserts to be submitted as a factual issue for determination by the jury under proper instruction of the court. Where a defendant's proffered instruction has an evidentiary basis, properly states the law, **and is the only instruction presenting his theory of the case,** refusal to grant it constitutes reversible error.

*Id.* at 872 (citations omitted)(emphasis added). In the present case, however, accessory after the fact was not Gary's sole theory of defense. Instruction D-15 was also given by the Court and reads as follows:

> The Court instructs the jury that under the laws of the State of Mississippi, duress is a defense to the crime charged in the indictment.

> Accordingly, if you find that Cedrick Gary's actions, if any, were the result of duress created by Terry Robertson, then it is your sworn duty to find Cedrick Gary not guilty to the crime of Armed Robbery.

¶26. Throughout his trial testimony, Gary asserts that his actions were the result of being scared and that he was simply following Robertson's instructions. Nowhere in the record does Gary, or anyone else, ever indicate that he only assisted after the crime was completed. Instead, Gary contended throughout his trial that he was acting under duress and should be held innocent of the crime charged. Gary's testimony at trial,

where he admitted that he punched Rhodes (who then handed over the money) and stole the truck, supports participation during, not after, the offense. There is no other version of the transaction which would support an accessory after the fact instruction.

¶27. "[L]esser offense instructions should not be granted indiscriminately, and only where there is an evidentiary basis in the record." *Gangl*, 539 So.2d at 136. Upon reviewing the evidence in the light most favorable to Gary, this Court finds no evidentiary foundation was placed before the jury which would have enabled it to find Gary participated only as an accessory after the fact. Accordingly, Gary's argument that the trial court erred in refusing to grant the accessory after the fact instruction is without merit.

### 4) WHETHER THE TRIAL COURT ERRED BY NOT CONSIDERING THE YOUTH COURT ACT PURSUANT TO MISS. CODE ANN. § 43-21-159 WHEN SENTENCING THE DEFENDANT

¶28. Gary contends that the trial court erred in not considering the Youth Court Act during sentencing because he was only 17 years old at the time the armed robbery took place. The State maintains that Gary is not entitled to a reduction of his sentence per se, but "acknowledges that he is entitled to have the trial court consider alternative sentencing ... and to state on the record the facts underlying its ultimate decision."

¶29. Miss. Code Ann. § 43-21-159(3)(Supp. 1993)[6] provided in relevant part as follows:

> [I]f any child shall be convicted by any circuit court, the trial judge may in his discretion, commit such child to the county jail for any term not in excess of one (1) year, or he may suspend sentence and release on probation, or commit such child to the custody of the Department of Corrections or impose a fine as though such child was an adult, under such terms and conditions as he may prescribe....

When providing alternative methods of sentencing for minors, the trial judge should consider seriously those alternatives enumerated in the statute, the presence or absence of care facilities for minor offenders, and the punishment provided by statute. *May v. State*, 398 So. 2d 1331, 1340 (Miss. 1981). In *Erwin*, this Court has held:

> There are still alternatives set out in the Youth Court Act which the circuit court judge should consider in imposing sentence on a child. While it seems most unlikely that the Court would suspend the sentence, impose a fine, commit the child to the county jail for a term which cannot exceed one year in a case which even approaches the callous brutality involved in this case, it is, nevertheless, possible that under different circumstances and with extenuating factors involved, a court might utilize one of the alternatives set out.

*Erwin v. State*, 557 So. 2d 799, 802 (Miss. 1990). Furthermore, *Erwin* held that "it is appropriate for the trial judge to see to it that the record clearly reflects the reasons which prompted him to exercise his discretion in utilizing or not utilizing the alternatives afforded." *Id.* at 802-03. Accordingly, the trial court "should let the record disclose the facts which prompted the exercise of his discretion either way." *Id.* at 803.

¶30. In the present case, the trial court was aware that Gary was a minor and sentenced him to a term of 45 years in the custody of the Mississippi Department of Corrections. Aware that Gary was only 17 years old and had no prior offenses, the trial court failed to state on the record whether it considered the provisions of

the Youth Court Act before sentencing Gary to the 45-year term. Gary is entitled to have the trial court state explicitly on the record whether it considered alternative sentencing under Miss. Code Ann. § 43-21-159(3)(Supp.1993). Therefore, this Court remands this case to the circuit court for consideration of alternative sentencing under the Youth Court Act. Furthermore, the circuit court must disclose, on the record, the underlying facts for its ultimate decision of whether to utilize the Youth Court Act.

### 5) WHETHER THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO ARGUE FOR SENTENCING PURSUANT TO THE YOUTH COURT ACT

¶31. Gary asserts that he was denied effective assistance of counsel when his trial counsel failed to argue that he should be sentenced under the Youth Court Act. When evaluating an ineffective assistance of counsel claim, this Court applies the following standard: In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove (1) that his attorney's overall performance was deficient and (2) that the deficient performance, if any, was so substantial as to prejudice the defendant and deprive him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Furthermore, there is a "strong but rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Walters v. State*, 720 So. 2d 856, 868 (Miss. 1998). To overcome this presumption, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Schmitt v. State,* 560 So.2d 148, 154 (Miss. 1990). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Only where it is reasonably probable that, but for the attorney's errors, the outcome of the trial would have been different will this Court find the counsel's performance was deficient." *Id.*

¶32. In *Foster v. State*, 687 So. 2d 1124, 1128 (Miss. 1996)*,* this Court denied Foster's application for post-conviction relief. Foster was a 17-year-old, first-time offender, who was found guilty of capital murder and sentenced to death. One issue raised by Foster was whether his defense counsel was ineffective in failing to request a transfer to Youth Court. This Court held:

> We have repeatedly held that a defendant is procedurally barred by waiver from making a challenge to a capital sentencing scheme as a whole in a petition for post-conviction relief where the issue was capable of determination at trial and/or on direct appeal but was not raised, and defendant failed to show cause or actual prejudice for not raising the issue on direct appeal.

687 So. 2d at 1135. *Foster* goes even further to say:

> In this regard, Foster's application for post-conviction relief cites no authority stating that it is ineffective for counsel to not request a special hearing to determine transfer to youth court.

*Id.* However, no authority existed before *Foster*. "This Court may, in its discretion, choose not to review an assignment of error that is not supported by authority." *White v. State*, 702 So. 2d 107, 108 (Miss. 1997). However, failure to cite authority is not an absolute bar. *Id.*

¶33. The present case is distinguishable from *Foster*. In *Foster*, Foster was convicted of capital murder, whereas Gary was a 17-year-old convicted of armed robbery. Gary did not possess the gun, punched a victim once, by his own admission, and left the scene driving the victims' truck. The Court in *Foster*

concluded that Foster had a "violent, selfish nature, exhibited uncooperative tendencies and, according to the Whitfield Report, had the maturity to know right from wrong." *Foster*, 687 So.2d at 1136. The *Foster* Court went even further to say, "Attorney Farrow [Foster's trial counsel] would be hard-pressed to convince a judge that his client would not have committed these types of acts six months from the time of the crime...." In the present case, however, Gary had no prior record, nor was he ever known to have violent tendencies. Additionally, the ineffective assistance of counsel claim is being brought by Gary on direct appeal, unlike *Foster*, who "merely camouflaged the issue by couching the claim" on a motion for post-conviction relief. *Id.* at 1135.

¶34. Consequently, we find no procedural bar exists and choose to address this issue upon appeal. We must first determine whether Gary's trial counsel was deficient by not arguing that Gary be sentenced under the Youth Court Act. Upon sentencing, the trial court confirmed that Gary was 17 years old. Subsequently, Gary was sentenced to 45 years in the custody of the Mississippi Department of Corrections. Gary's trial counsel, however, failed to bring alternative sentencing under the Youth Court Act to the trial court's attention. Sentencing, is one of the most crucial and important stages in the trial process. A primary goal of a defense attorney is to minimize the amount of time his or her client is sentenced to serve. Accordingly, Gary's trial counsel was clearly deficient in not raising this argument before the trial court.

¶35. Secondly, we must determine whether the trial counsel's deficiency was so substantial as to prejudice the defense. Gary was sentenced to 45 years in the custody of the Mississippi Department of Corrections. There is a reasonable probability, had the trial counsel brought the alternative sentencing under the Youth Court Act to the court's attention, that the outcome of the proceeding would have been different. Gary was 17 and had no prior offenses. Had trial counsel mentioned, and the trial court accepted, the alternative sentencing, Gary would have spent, at most, one year in the county jail.

¶36. While the trial court was not required to sentence Gary under the Youth Court Act, the court was required to consider the alternative sentencing, and counsel's failure to suggest such was prejudicial to Gary's case. The difference between a 45-year prison term for an adult offender and a one-year term in county jail for a minor is substantial. Clearly, Gary's counsel was ineffective by not bringing the alternative sentencing to the court's attention.

### 6) THE SENTENCE RECEIVED BY THE DEFENDANT WAS EXCESSIVE, DISPROPORTIONATE, AND CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT

¶37. Gary asserts that the imposition of a 45-year prison term upon a 17-year-old first offender, who was eligible for sentencing under the Youth Court Act, was disproportionate to the crime for which he was convicted. Given our previous disposition of issue 4 above, this issue is moot.

### 7) WHETHER THE DEFENDANT WAS DENIED HIS RIGHT TO A SPEEDY APPEAL

¶38. Gary was convicted by a jury of armed robbery in the Circuit Court of Forrest County on July 12, 1994. On August 1, 1994, Gary's trial counsel, Honorable Jeff Bradley, filed a Motion for a New Trial or in the Alternative J.N.O.V. Bradley took no further action, the motion remained inactive, and no notice of appeal was ever filed. On June 15, 1995, Gary filed a pro se Motion to Dismiss Court Appointed Counsel, citing ineffective assistance of counsel. On September 5, 1995, Gary also filed a pro se Motion for Production of Trial Transcripts and Relevant Documents. He then filed a Petition for a Writ of Habeas

Corpus, followed by a Petition for Writ of Mandamus. On January 12, 1996, the Petition for Writ of Mandamus was denied. Gary again filed a Petition for Trial Transcript in the Circuit Court of Forrest County on July 26, 1996, which was accompanied by Gary's Memorandum Brief in Support of Motion for Transcript.

¶39. County Court Judge Michael McPhail responded to the motion on October 21, 1996. Following that response, Circuit Court Judge Richard McKenzie granted Gary's Petition for Trial Transcript on October 31, 1996. The Court then entered an order dismissing the second Petition for Writ of Mandamus. On January 2, 1997, the Circuit Court of Forrest County granted the request of the court reporter for a 45-day extension to complete the transcription of the record.

¶40. On April 15, 1997, the Circuit Court of Forrest County entered an order appointing new counsel for Gary, J. B. Van Slyke. Van Slyke had been appointed Public Defender in Forrest County following the death of Bradley in November of 1996. His new counsel was granted an additional 30 days to file an Amended Motion for New Trial or in the Alternative J.N.O.V. However, no amended motion was ever filed. A hearing was held on this motion on January 8, 1998, in the Circuit Court of Forrest County. After the hearing, Gary's motion was denied.

¶41. On January 29, 1998, new counsel filed a Notice of Appeal in the Circuit Court of Forrest County. On June 24, 1998, Gary filed his pro se Motion to Dismiss Counsel. On October 31, 1998, Gary was notified that his appeal was dismissed due to the failure of defense counsel to file a brief on his behalf. On January 26, 1999, the Court entered an Order disposing of the Petition for Writ of Mandamus, but granting Gary 30 days in which to file his brief. On February 18, 1999, the Court entered an Order disposing of Gary's Motion for Appointment of Counsel and Motion to Hold Briefing in Abeyance and remanded to Forrest County for appointment of counsel. Honorable Michael Reed was appointed and perfected this appeal.

¶42. This Court has noted that "the remedy for denial of a speedy appeal is not clear since this Court has never recognized such a right and does not do so now." *Kolberg v. State*, 704 So. 2d 1307, 1320 (Miss. 1997). Furthermore, "this Court has previously taken the position that where no other reversible error exists, then the reversal on the grounds of a denial of a speedy appeal is inappropriate." *Lanier v. State*, 684 So. 2d 93, 100 (Miss. 1996).

¶43. The appropriate test for determining whether a defendant has been denied his right to a speedy appeal is set forth in *Lanier* as follows:

> These four factors are the "[L]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." With respect to the factor of prejudice, ... "it should be assessed in light of the interests of defendants which the speedy trial right was designed to protect...."We identify three similar interests for prompt appeals: (1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.

*Id.* at 98 (quoting *Rheuark v. Shaw*, 628 F.2d 297, 303 n.8 (5th Cir. 1980)(citations omitted)). "[A] showing of prejudice is necessary to make out a claim of a denial of a speedy appeal." *Id.* at 100. Prejudice, in this case, cannot be determined at this level. Accordingly, we decline to resolve this issue, but

Gary shall be allowed to raise the issue of prejudice before the circuit court.

### 8) WHETHER GARY'S TRIAL AND APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WITH REGARD TO THEIR FAILURE TO PERFECT A TIMELY APPEAL

¶44. When evaluating an ineffective assistance of counsel claim, this Court applies the following standard: In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove (1) that his attorney's overall performance was deficient and (2) that the deficient performance, if any, was so substantial as to prejudice the defendant and deprive him of a fair trial. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Both parts of the test must be satisfied before a defendant may prove ineffective assistance of counsel. *Lindsay v. State*, 720 So. 2d 182, 184 (Miss. 1998). Furthermore, there is a presumption that trial counsel is competent and that counsel's conduct is reasonable. *Id.*

¶45. Gary's first court-appointed counsel was Jeff Bradley, who died in November of 1996. On January 29, 1998, Gary's next appointed counsel appealed but ultimately failed to file a brief on Gary's behalf resulting in the dismissal of the appeal on October 31, 1998. Although these delays were unfortunate and represented unprofessional lapses in timely performance, Gary fails to set forth how the failure to perfect a timely appeal has affected the outcome of his case.

¶46. Specifically, Gary must prove that, under the totality of the circumstances, prejudice resulted from a deficiency in counsel's performance. *Earley v. State*, 595 So. 2d 430, 433 (Miss. 1992). Although, the failure of counsel to timely perfect Gary's appeal is considered deficient, Gary has failed to show exactly how he was prejudiced by this deficiency. Potential prejudice cannot be shown until Gary is retried or resentenced at the trial court level. Therefore, Gary's assertion that he received ineffective assistance of counsel due to counsel's failure to timely appeal is without merit.

### 9) WHETHER THE CUMULATIVE ERRORS AT TRIAL AND IN THE APPEAL PROCESS CONSTITUTE A VIOLATION OF GARY'S RIGHT TO A FAIR TRIAL

¶47. Gary argues on appeal that the accumulation of errors in the trial, if not taken as error sufficient to reverse and remand for a new trial individually, are sufficient to reverse and remand if taken as a whole. Gary cites to *Jenkins v. State*, 607 So.2d 1171, 1183 (Miss.1992), wherein we stated, "This Court has often ruled that errors in the lower court that do not require reversal standing alone may nonetheless taken cumulatively require reversal."

¶48. Although we vacate in part and remand for resentencing, the remaining assertions made by Gary are not of such significance as to have denied Gary a fundamentally fair trial. This is not a case requiring reversal on the ground that the cumulative effect of all errors deprived the defendant of a fair trial. Accordingly, we find this issue to be without merit.

### CONCLUSION

¶49. The trial court erred by not making specific findings of fact on the merits of the proffered reasons for exercising strikes in accordance with *Hatten.* However, this error was harmless. Additionally, the trial court erred by not disclosing on the record whether it considered the Youth Court Act during sentencing. Furthermore, it was error for trial counsel not to argue for the alternative sentencing under the Youth Court Act at trial. All other errors asserted by Gary are without merit.

¶50. Therefore, Gary's sentence of 45 years in the custody of the Mississippi Department of Corrections is vacated, and this case is remanded to the circuit court for resentencing where the trial judge must consider the Youth Court Act and state on the record his reasons for or against utilization of the Act. In all other respects, the judgment of the Forrest County Circuit Court is affirmed.

¶51. **AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

**PRATHER, C.J., SMITH, WALLER, COBB AND DIAZ, JJ., CONCUR. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J. PITTMAN, P.J., NOT PARTICIPATING.**

**BANKS, PRESIDING JUSTICE, DISSENTING:**

¶52. Because, in my view, this Court can neither adequately nor effectively assess the factual validity of race-neutral reasons given in response to challenges to discriminatory use of peremptory jury strikes, I respectfully dissent.

¶53. In my view, the majority misreads *Hatten v. State*, 628 So.2d 294 (Miss. 1993). A mere conclusory statement made by the trial court as to whether it finds a discriminatory purpose or race neutrality is not the specific finding required by *Hatten*. One purpose of the *Hatten* command is to allow a reviewing Court to examine the reason behind the trial court's ruling. "Obviously, where a trial court offers clear factual findings relative to its decision to accept the State's reason[s] for peremptory strikes, the guesswork surrounding the trial court's ruling is eliminated upon appeal of a *Batson* issue to this Court." *Hatten*, 628 So.2d at 298.

¶54. The fundamental principles of our judicial branch of government are clear. "Trial and appellate courts have separate institutional roles. Our role is that of an appellate court and not as triers of fact." *Tricon Metals & Servs., Inc. v. Topp*, 516 So.2d 236, 239 (Miss. 1987). Unlike trial courts, appellate courts do not have the opportunity to observe the manner and demeanor of the speakers and participants in proceedings below. *Metcalf v. State*, 629 So.2d 558, 566 (Miss. 1993); *Culbreath v. Johnson*, 427 So.2d 705, 709 (Miss. 1983).

> We sit as an appellate court, and as such are ill equipped to find facts. Pragmatically speaking it is essential that we have from our trial courts findings of fact upon which we may rely, for, if we had to find the facts anew in every case coming before us, we would become even further bogged down in the dispatch and management of our caseload. Beyond that, even **if we wanted to be fact finders, our capacity for such is limited in that we have only a cold, printed record to review. The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped to make findings of fact which will have the reliability that we need and desire**.

*McCarty v. State*, 554 So.2d 909, 912 (Miss. 1989)(emphasis added)(quoting *Gavin v. State*, 473 So.2d 952, 955 (Miss. 1985)); *see also Anderson v. City of Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518, 529 (1985); *Culbreath,* 427 So.2d at 707-08.

¶55. It is clear from *Hatten* that the trial judge is required to find both subsidiary and ultimate facts on *Batson* charges and further to articulate these findings in the record. *Hatten*, 628 So. 2d at 298. At this pivotal point in a trial, it is imperative that the trial court supply specific reasons for its decision to allow the

strike of a prospective juror, including an assessment of the factual underpinning for the proffered reason. As noted in *Hatten*, "'We place our trust in the trial judges to determine whether a discriminatory motive underlies the prosecutor's articulated reasons'.... '[T]he trial judge, in determining which explanations are sufficiently race-neutral and which are not, should give an equally 'clear and reasonably specific' *explanation* for his ruling.'" *Id.* at 299 (emphasis added) (quoting *Lockett v. State*, 517 So. 2d 1346, 1352 (Miss. 1987)). Here, there was no "clear and reasonably specific" explanation for the trial court's ruling. The trial judge merely stated that he did not think "any of these [potential jurors], both for the State or the defense, were stricken along racial lines or to constitute a jury that is racially consistent . . . " This is a conclusion without the benefit of a 'clear and reasonably specific' explanation. *Hatten* requires more.

¶56. Essentially, the majority opinion allows this Court to review and find facts. It allows this Court, from a cold record, to make all of the factual determinations necessary to the determination of whether the prima facie case of racial motivation for the strike has been overcome. Where the reason for a strike is based upon a verbal response made by the prospective juror, there need be no finding that the response was made, for the record would show that. *Hatten* requires a finding where the reason given is subject to dispute as to its factual basis. It would be very difficult for this Court, from a cold record, to determine if prospective jurors were, for example, inattentive. This point is illustrated here. The State struck two black prospective jurors, Angels Whiteside and Prince Woullard, for inattentiveness and lack of eye contact with the prosecutor. The trial court's response to the assertion of lack of eye contact was, "I don't know what you are talking about." Nevertheless, the peremptory strikes were allowed. There is no explanation or reason given by the trial court reflecting that it was determined that the potential jurors were in fact inattentive or lacked eye contact. These assertions regarding eye contact and inattentiveness, as reasons for striking the jurors, cannot be ascertained from the record. It is reversible error when the trial judge does not make specific findings of fact explaining the reason for its ruling on strikes in accordance with *Hatten*. *Puckett v. State*, 737 So.2d 322, 337 (Miss. 1999); *Bounds v. State*, 688 So.2d 1362, 1367 (Miss. 1997). Accordingly, in my view, the trial court erred in not making on the record findings pertaining to these issues. This Court is in no position to make those findings. This case should be reversed and remanded to the trial court.

¶57. Therefore, I must respectfully dissent.

## McRAE, J., JOINS THIS OPINION.

1. For the sake of consistency, this Court will refer to this person as Terry "Robertson", as indicated in the transcript and Gary's brief, although the State refers throughout its brief to this person as Terry "Robinson".

2. Gary also contradicted this testimony and denied that Robertson robbed Rhodes on the driver's side.

3. With respect to the writing of bad checks see *Brewer v. State*, 725 So.2d 106, 122 (Miss. 1998). For inattentiveness see *Mack v. State*, 650 So.2d 1289, 1299 (Miss. 1994). For relations to prosecution/law enforcement see generally *Mhoon v. State*, 464 So.2d 77 (Miss. 1985). For failure to disclose being a victim of a crime see *Dase v. State*, 356 So.2d 1179 (Miss.1978).

4. It should be noted that Rhodes's testimony at trial is different than his statement to the police, which stated Robertson, and not Gary, was on the passenger side of the vehicle.

5. Rhodes testified that Gary hit him 3 times *after* he gave up his money.

6. This statute was amended effective July 1, 1994, and now provides in pertinent part that "[i]f the case is not transferred to the youth court and the youth is convicted of a crime by any circuit court, the trial judge *shall* sentence the youth as though such youth was an adult." Miss. Code Ann. § 43-21-159(4)(Supp. 1999)(emphasis added). Because this amendment took effect after the crime was committed, it does not apply to Gary's case. Miss. Code Ann. § 99-19-1 (1994).