# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CT-01288-SCT

*JEREMIAH ROBINSON*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/26/1997 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS M. FORTNER |
| | ROBERT M. RYAN |
| | ANDRE' DE GRUY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REMANDED - 6/15/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/6/2000 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Jeremiah Robinson was found guilty in the Hinds County Circuit Court of two counts of uttering forgery and sentenced to twelve years in the custody of the Mississippi Department of Corrections on each count, with said sentences to run consecutively to any other sentences. He appealed, and a divided Court of Appeals affirmed his conviction. We subsequently granted certiorari to consider the issues. Because the trial court did not make the required on-the-record factual determinations regarding Robinson's ***Batson*** objections, ***Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed.2d 69 (1986), we remand this case to the circuit court in order to conduct a proper ***Batson*** hearing.

### FACTS

¶2. In August 1994, Gus Primos, owner of Lakeland Development, agreed to make a campaign contribution to a candidate running for sheriff. Jeremiah Robinson went to the offices of Lakeland Development to collect the campaign contribution. Upon Robinson's arrival, Primos's personal secretary left Primos's checkbook on her desk while she obtained his signature on the contribution check. Primos signed the check and personally delivered it to Robinson.

¶3. When Lakeland Development received its monthly bank statement, it was discovered that two out-of-sequence checks had been written on the account. Further inquiry revealed that both checks had been made out to Robinson and cashed by him at two local bank branches in the Jackson area. Robinson was subsequently indicted and convicted of two counts of uttering forgery. The Court of Appeals affirmed Robinson's convictions, and this Court subsequently granted his Petition for Writ of Certiorari.

## ANALYSIS

¶4. Robinson asserts that the trial court did not make an on-the-record factual determination and inquiry regarding his *Batson* objections, and therefore the decision of the Court of Appeals is in conflict with prior published decisions of this Court. Specifically, he argues that the decision of the Court of Appeals is in conflict with *Hatten v. State*, 628 So. 2d 294 (Miss. 1993) and *Puckett v. State*, 737 So.2d 322 (Miss. 1999).

¶5. In *Hatten*, we stated:

This Court has not directly addressed the issue of whether a trial judge is required to make an on-the-record factual determination of race neutral reasons cited by the State for striking veniremen from a panel. The *Batson* Court declined to provide specific guidelines for handling this issue. This Court has articulated the general law in this state which provides that "it is the duty of the trial court to determine whether purposeful discrimination has been shown," by the use of peremptory challenges. *Wheeler v. State*, 536 So.2d 1347 (Miss.1988); *Lockett v. State*, 517 So.2d at 1349.

In considering this issue, we today decide it necessary that trial courts make an on-the-record, factual determination, of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors. This requirement is to be prospective in nature. Of course, such a requirement is far from revolutionary, as it has always been the wiser approach for trial courts to follow. Such a procedure, we believe, is in line with the "great deference" customarily afforded a trial court's determination of such issues. "Great deference" has been defined in the *Batson* context as insulating from appellate reversal any trial findings which are not clearly erroneous. *Lockett v. State*, 517 So.2d at 1349-50. *Accord Willie v. State*, 585 So.2d 660, 672 (Miss.1991); *Benson v. State*, 551 So.2d 188, 192 (Miss.1989); *Davis v. State*, 551 So.2d 165, 171 (Miss.1989), *cert. denied*, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 797 (1990); *Chisolm v. State*, 529 So.2d 630, 633 (Miss.1988); *Johnson v. State*, 529 So.2d 577, 583-84 (Miss.1988). Obviously, where a trial court offers clear factual findings relative to its decision to accept the State's reason[s] for peremptory strikes, the guesswork surrounding the trial court's ruling is eliminated upon appeal of a *Batson* issue to this Court.

*Hatten*, 628 So.2d at 298.

¶6. In *Puckett v. State*, 737 So.2d 322 (Miss. 1999), we stated:

To establish a prima facie case of discrimination using the *Batson* criteria, a white defendant must show that the prosecutor has used peremptory challenges on persons of race and that the circumstances give rise to the inference that the prosecutor used the peremptory challenges in order to strike minorities. *Bush v. State*, 585 So.2d 1262, 1267-68 (Miss.1991).

Therefore, before the trial court is required to conduct a *Batson* hearing, it must first be shown that a prima facie case of purposeful discrimination exists. Specifically, Puckett must show that the State used peremptory challenges on black jurors in such a manner that gave rise to an inference of purposeful racial discrimination. However, it should be noted here that the State did not wait for a *Batson* challenge, but provided reasons for striking all jurors regardless of race or gender. Nonetheless, this voluntary action on the State's behalf should not be interpreted as eliminating Puckett's burden of establishing a prima facie case of purposeful discrimination. Upon review, this Court "must first ... determine[ ] that the circumstances of the State's use of peremptory challenges against minority venirepersons created an inference of purposeful discrimination." *Thorson v. State*, 653 So.2d 876, 898 (Miss.1994) (Smith, J. dissenting).

If the trial court does make the determination that the defendant has properly established this inference, the burden then shifts to the prosecution to provide race-neutral reasons for each challenged peremptory strike. The defense must then provide rebuttal to the State's proffered reasons. The trial judge must then "make an on-the-record, factual determination, of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors." *Hatten v. State*, 628 So.2d 294, 298 (Miss.1993).

*Puckett*, 737 So.2d at 334-35.

¶7. We went on to hold in *Puckett*:

The inference of purposeful discrimination was not automatically invoked in this case. The trial judge did not make a ruling that Puckett had established this inference. The trial judge did not make on-the-record factual determinations and inquiry independently as required by *Hatten* regarding each peremptory challenge. We therefore remand this issue for a properly conducted *Batson* hearing in accordance with this opinion.

*Id.* at 337.

¶8. In the present case, the Court of Appeals found:

We must note that the trial court is experienced in conducting voir dire and having observed the demeanor of these four prospective jurors during the voir dire proceedings was in the best posture to decide whether these reasons given by the State were legitimate rather than pretextual. This Court has held that a circuit court's decision in this matter is entitled to great deference. We will reverse the circuit court's *Batson* findings only where those findings are clearly erroneous and against the overwhelming weight of the evidence. *Lockett v. State*, 517 So. 2d 1346, 1350 (Miss. 1987). "Finally, the trial court must make a finding of fact to determine if the defendant has proved purposeful discrimination. If the defendant makes no rebuttal the trial judge must base his decision only on the reasons given by the State." *Berry v. State*, 703 So. 2d 269, 294 (Miss. 1997) ( citations omitted). As stated in *Davis v. State*, 551 So. 2d 165, 172 (Miss. 1989), when defense counsel only alleges in general terms that peremptory strikes amount to *Batson* violations and there is no actual proffer of evidence concerning such violation, this Court is limited in its ability to reverse on this point. In the case at bar, counsel for Robinson only argued in general terms and, therefore, this Court is limited in its ability to reverse.

While the record fails to reflect the racial composition of the jury, we are cognizant of, 591 So. 2d 428, 430 (Miss. 1991), by which the Mississippi Supreme Court *Govan v. State* announced:

The mere fact that a jury is white does not violate **_Batson_**; rather it is the racially discriminatory exercise of peremptory challenges to strike jurors from the jury that violates the **_Batson_** rule. **_Suddeth v. State_**, 562 So. 2d 67, 71 (Miss. 1990).

The record reflects that the judge had a hearing and required the prosecution to state race neutral reasons for the State's peremptory strikes and the prosecution was forthcoming with such reasons. The judge held that the State's reasons were racially neutral and accepted the representations of the prosecution as an officer of the court. The record does not reveal that the peremptory strikes were used in such a way as to violate the **_Batson_** rule. Accordingly, this assignment of error is without merit.

*Robinson v. State*, No. 97-KA-01288-COA (Miss. Ct. App. June 8, 1999).

¶9. The record in the present case shows the following exchange took place during jury selection:

MR. DE GRUY [attorney for Robinson]: Your Honor, we make a Batson objection at this time. The State has exercised all five challenges against African-Americans, and we ask that they bring forward race neutral reasons.

THE COURT: All right.

MR. BUCKLEY [for the State]: Your Honor, Lawrence Jones, Panel 1, No. 3, was sleeping during Court's instructions and during voir dire. I never saw him raise up. I couldn't tell if he was awake or what was going on with him.

Number two, Rhonda Johnson. She was inattentive and failed to make eye contact with me and would never nod one way or another in this manner.

Number three, Floyd Tate. He teaches political science and sociology. We didn't want him getting back in the jury room and explaining things in a sociological manner to the jury in any way. In fact, Gracie White and Alma Irving, both of them were inattentive. Especially, Mrs. Irving. I could not get her to make eye contact with me in any way.

Gracie White was not responsive to any questions, and it was as if I wasn't even speaking. And I chose to strike them for those reasons, Your Honor.

MR. DE GRUY: Your Honor, we would object to all of those reasons. The law is now clear in Mississippi if they are going to base their strikes on things like sleeping, inattentive, no eye contact, the Court has to make a factual finding that those things are, in fact, true. We would ask the Court to make that determination that Mr. Jones was, in fact, sleeping.

THE COURT: Well, it would be virtually impossible for the Court to tell whether or not someone was making eye contact with someone else. I mean, that would be - -

MR. DE GRUY: I think if you can't make a factual finding that [sic] the strike cannot be allowed.

THE COURT: I find that they would be racially neutral reasons and the Court will accept the representations of the officer of the court.

¶10. It is clear from the record that the trial court did not make the necessary findings as required by *Hatten* and *Puckett*. Further, the record shows that defense counsel specifically requested the Court to make such findings. We therefore remand this case to the Hinds County Circuit Court to conduct a proper *Batson* hearing pursuant to *Hatten* and *Puckett*.

## CONCLUSION

¶11. Because the trial court failed to make the necessary on-the-record findings required by *Hatten* and *Puckett*, we remand this case to the circuit court to conduct a proper *Batson* hearing.

¶12. **REMANDED.**

> **PRATHER, C.J., BANKS, P.J., McRAE AND WALLER, JJ. CONCUR. MILLS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH AND COBB, JJ. DIAZ, J., NOT PARTICIPATING**.

> **MILLS, JUSTICE, DISSENTING:**

¶13. The majority finds that the trial court failed to make an "on-the-record, factual determination of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors" as required by *Hatten v. State*, 628 So.2d 294 (Miss. 1993). As we stated in *Gary v. State*, No. 98-KA-00091-SCT, 2000 WL 706089 (Miss. June 1, 2000), and as I have written on previous occasions, including *Berry v. State,* 703 So.2d 269, 296-98 (Miss. 1997), this Court is fully capable of balancing the *Batson* factors at this level. Continued remand of such cases only wastes the trial court's limited resources and acts to further delay justice.

¶14. In *Gary*, the defendant argued that a mere conclusory statement made by the trial court as to whether it finds a discriminatory purpose or race neutrality is not the specific finding required by *Hatten*. There the trial judge stated his finding in the following words:

> With the exception of the gentleman who is the accountant I would say under the Batson decision that I don't think any of these, both for the State or the defense, were stricken along racial lines or to constitute a jury that is racially consistent.

*Gary,* 2000 WL 706089, at *3 (¶11).

¶15. We answered that argument by stating that "where a trial judge fails to elucidate a specific explanation for each race neutral reason given we will not remand the case for that Batson-related purpose alone." *Id.*(¶12). We then analyzed the State's grounds for its peremptory strikes and determined that each one presented was in fact a race-neutral.

¶16. In the present case, the majority asserts the antithesis of our holding in *Gary*. The majority would have this case remanded solely because the trial judge did not specifically address each individual explanation that the State gave for its peremptory strikes. The judge, in fact, addressed all of the strikes with one finding. After the State offered its race neutral reasons for its strikes, Robinson objected, and the trial judge

ruled as follows: "I find that they would be racially neutral reasons and the Court will accept the representations of the officer of the court." If the ruling in *Hatten* was not expressly overruled in *Gary*, I call for it today in this dissent. This Court is fully capable of reviewing the race neutral reasons offered by the State in this case and all similar cases.

¶17. As in *Gary*, the defendant here made no rebuttal to the State's explanations for its peremptory strikes. In *Bush v. State*, 585 So.2d 1262 (Miss. 1991), we stated that if a racially neutral explanation is offered, the defendant can rebut the explanation. *Id*. at 1268. If the defendant makes no rebuttal the trial judge must base his decision only on the explanations given by the State. *Id*. On appellate review this decision is given great deference, and we will reverse only when such decisions are clearly erroneous. *Lockett v. State*, 517 So.2d 1346, 1349-50 (Miss. 1987). Therefore, we review the trial court's ruling on the strikes under a harmless error analysis.

¶18. The record shows that the State used all five of its challenges to strike black jurors. The State offered race neutral reasons for all five of those strikes. A review of the State's explanations illustrates that the dismissals of the potential jurors were exacted for race-neutral reasons.

¶19. The first was dismissed for sleeping during voir dire. The second was inattentive and failed to make eye contact. The third was dismissed by the State because of his profession-a teacher of political and sociology. The State was concerned about his potential to explain things to other jury members in a "sociological manner." The fourth and fifth were dismissed for inattentiveness.[1] Likely, the trial court will make the same findings again on remand.

####    SMITH AND COBB, JJ., JOIN THIS OPINION.

1. For inattentiveness, see *Mack v. State*, 650 So.2d 1289, 1299 (Miss. 1994). With respect to one's profession, see *Brown ex rel. Webb v. Blackwood*, 697 So.2d 763, 771-74 (Miss. 1997).