¶ 20. With appropriate respect for the majority, I am compelled to dissent.
 ¶ 21. In Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that the exercise of peremptory challenges against prospective jurors based upon race was constitutionally prohibited discrimination and violated a defendant's right to a fair trial. Previously, the Supreme Court had held that all qualified persons are entitled to *Page 774 
serve as jurors, and that exclusion from jury service based upon race was a denial of equal protection. Strauder v.West Virginia, 100 U.S. 303, 10 Otto 303, 25 L.Ed. 664
(1879) (abrogated on other grounds by Taylor v.Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690
(1975)).
 ¶ 22. I believe that these two legal principles are interrelated and of necessity must be considered together when considering the jury-selection process.
 ¶ 23. A criminal defendant, acting through counsel or acting pro se, has the right to raise an objection if he believes that the State has engaged in prohibited discrimination in the jury-selection process. Davis questioned the State's use of peremptory challenges against Blacks. The State offered what are described as facially race-neutral reasons for the exercise of its peremptory challenges. One of the State's strikes was exercised against an individual who was said to have inappropriately completed the juror-information card, and who was described as "goofy" and "odd." No standard was articulated in the record by which to measure "goofy" or "odd." A second strike was used against a prospective juror, Patrick Lockett, who was described as seemingly hostile and refusing to make eye-contact. The record contained no articulation of any specific seemingly hostile actions by this person. Nor, I would note, is there any requirement that a prospective juror make or maintain eye-contact with counsel.
 ¶ 24. Compounding the failure of the prosecution to articulate specific instances of the complained-of demeanor of prospective jurors is the failure of the trial court to review these matters independently and make appropriate on-the-record findings. As the Supreme Court noted in Snyder, "In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor (e.g. nervousness, inattention) making the trial court's first-hand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." Snyder v.Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 1208,170 L.Ed.2d 175 (2008).
 ¶ 25. Where the reasons for the strike involve either the demeanor of the attorney or the prospective juror, this Court cannot make that determination from the cold record.Id. at 479, 128 S.Ct. 1203 (stating that "nervousness cannot be shown from a cold transcript"); Gary v.State, 760 So.2d 743, 758(56) (Banks, P.J., dissenting) (Miss. 2000). Instead, it must rely upon the on-the-record findings of the trial judge. Where the record contains no such findings, this Court should either remand for a Batson
hearing or reverse for a new trial. Id. (citingPuckett v. State, 737 So.2d 322, 337 (36-38) (Miss. 1999)). The record before this Court contains no such findings by the trial court.
 ¶ 26. Additionally, the full, stated reason for striking Lockett appears to be contradictory. The contradictions in the stated reasons for excluding Lockett should have, at the least, required the trial judge to view them independently and address on the record the question of pre-text. The full statement by the prosecutor was:
 Juror No. 18, Patrick G. Lockett, Ms. Emerson related to me upstairs, actually, I — when we were in discussions regarding making the first tender to Mr. Brahan, Mr. Lockett looked very good on paper, and I liked him just — he didn't respond to any questions during voir dire, but I liked him from his form, and *Page 775 
when I suggested that we tender him, Ms. Emerson had a concern, I believe, because she — essentially what she said was she picked up a bad vibe from him. She thought he seemed hostile in the way he was looking at her, responding to her, and she was — she attempted during voir dire to make eye contact with him. There were times when — and the Court has done voir dire a lot more times then anybody else in here has. There are times when you are doing voir dire and you essentially try to make contact with some jurors. You ask a question, you know, can everyone do that, can you follow the law as the judge gives it to you, what have you, and you basically have them nodding, and you are attempting to get eye contact. She continually attempted to do so with Mr. Lockett and was never able to do so, and that's essentially what turned the wheels the other way in regards to Mr. Lockett. He was going to be tendered before . . . essentially before Ms. Emerson related her concerns.
While it is true that, in some cases, this Court can review the cold trial court record and balance the Batson
factors, that is not true in every case, and the prosecutor's statements should not be embraced by this Court as an immutable article of faith.
 ¶ 27. By way of example, despite having read the voir dire several times, I have seen absolutely nothing in that record which validates the supposedly facially race-neutral reasons for excluding Patrick Lockett. Nothing in the record establishes that Lockett responded to Emerson in a hostile way. Nothing in the record establishes that Lockett refused to make eye-contact with Emerson. Nothing in the record establishes that Emerson continually attempted to make eye-contact with Lockett and he refused.
 ¶ 28. That these matters were not established is made clear by the statement of Emerson's co-counsel Joyner, who despite being present in the courtroom; and fully participating in the, process, was totally unaware of the occurrence of any of these claimed actions by Lockett. Indeed, Joyner stated that he had desired to have Lockett on the jury until Emerson said that "she picked up a bad vibe from him."
 ¶ 29. Where no on-the-record review on the question of pretext is conducted, these types of reasons, "goofy," "odd," "seemed hostile," and failure to make eye-contact are an open invitation to engage in discriminatory conduct. Where this Court seemingly, mechanically approves such action, it places its imprimatur on that invitation to engage in discriminatory conduct.
 ¶ 30. The defendant, as happens all too often, raised the issue of Batson, but failed to question in any meaningful manner the supposedly race-neutral reasons offered by the State. However, the defendant's failure should not serve as an excuse for the failure of the trial court to honor its responsibility to ensure that all parties to a judicial proceeding, including prospective jurors, are treated fairly. Although, as in this case, where the supposedly race-neutral reasons are matters of demeanor, there is little if any rebuttal that the defendant can offer. Indeed, in matters of demeanor, the only real issue is whether or not the trial judge observed the same conduct.
 ¶ 31. To allow the trial court to seemingly pay only lip service to its Batson obligation denies equal protection to the second party who has been victimized by impermissible discrimination, that is the prospective juror, who has been wrongfully excluded. Carter v. Jury Comm'n ofGreene County, 396 U.S. 320, 329, 90 S.Ct. 518, 523,24 L.Ed.2d 549 (1970) (holding that "[p]eople excluded from juries because *Page 776 
of their race are as much aggrieved as those indicted and tried by juries chosen under a system of racial exclusion"). The defendant can object to the State's actions. However, the prospective juror who has been wrongfully discriminated against has no right to object in that proceeding. But even worse, not being a part of the selection process, he generally will be unaware that the State discriminated against him. That person's only line of protection from impermissible discrimination in the jury-selection process is the watchful eye of the trial judge, seeking to independently determine whether the proffered reasons are actually a pretext for impermissible discrimination.
 ¶ 32. When the prima facie requirement is satisfied underBatson, I would, without exception, mandate an on-the-record review by the trial judge for pretext, without regard to whether the defendant rebuts the State's reasons.
 ¶ 33. Where, as in this case, the reasons given are matters of demeanor, which cannot be observed in the appellate record, and the trial court has failed to make an on-the-record review for pretext, this Court should reverse and remand for a new trial.
 ¶ 34. Accordingly, I dissent and would reverse and remand.
KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.