751 So.2d 1137 (1999)
John R. WILLIAMS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01143-COA.
Court of Appeals of Mississippi.
August 3, 1999.
Rehearing Denied November 9, 1999.
*1138 Imhotep Alkebu-Lan, Jackson, Attorney for Appellant.
Office of the Attorney General by Scott Stuart, Attorney for Appellee.
BEFORE KING, P.J., PAYNE, AND THOMAS, JJ.
PAYNE, Judge, for the Court:

PROCEDURAL POSTURE AND ISSUES PRESENTED
¶ 1. This case is before the Court challenging the judgment of the Circuit Court of Adams County of conviction of one count of murder and sentence of life imprisonment and one count of aggravated assault and sentence of twenty years imprisonment. Following the denial of his motion for JNOV, this appeal was filed.
¶ 2. Williams raises five issues for our review:
I. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A CONTINUANCE?

*1139 II. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO DISMISS THE CHARGES OR IN THE ALTERNATIVE A DIRECTED VERDICT AS TO BOTH COUNTS, AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF?
III. WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR A DIRECTED VERDICT AT THE CLOSE OF THE APPELLANT'S CASE?
IV. WHETHER THE EVIDENCE WAS SUFFICIENT AS A MATTER OF LAW?
V. WHETHER THE APPELLANT WAS DENIED A FAIR TRIAL AND EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION?
After reviewing the record, we find nothing to warrant a reversal. Accordingly, we sustain the conviction and sentence in this case.

FACTS
¶ 3. On October 17, 1996, Williams, Eddie Minor, the deceased, Darius Bowser, the aggravated assault victim, and Carlos Thomas were at Minor's Natchez home. According to Bowser, he drove Marques Thompson to Minor's house. Bowser told Thompson that he had some gold for sale, and Thompson indicated an interest in purchasing some of the gold. When they arrived at Minor's home, Thompson informed Minor about the gold that Bowser had for sale. Bowser and Thompson then left the scene. Later, Bowser returned without Thompson, and Minor came from his house out to Bowser's car. At this point, Williams and Thomas arrived at Minor's home on foot. Bowser showed the trio some of his merchandise; Minor returned to his house. Williams then took Bowser's jewelry and pointed a weapon at him and informed Bowser that Williams would kill him if he tried to reclaim the merchandise. Williams gave the jewelry to Thomas, who proceeded toward the porch of Minor's house. Bowser pursued Thomas and reclaimed the jewelry from Thomas. Meanwhile, Williams entered Bowser's car and took some more jewelry and went into Minor's house. Bowser then went to Minor's house, knocked on the door, and asked Minor to tell Williams to return the jewelry he had taken. Minor told Bowser that Williams had left. Bowser then entered Minor's house and confronted Williams. Bowser maintains that Williams was armed and was threatening him. After Williams and Bowser exchanged words, Williams struck Bowser on the head with a pistol. Bowser hit Williams on the chin and a struggle for the weapon ensued. Thomas was in the house at this point, and hit Bowser with an ashtray and stabbed Bowser with scissors. During the struggle with Williams, the gun discharged, striking Bowser in the arm and fatally wounding Minor.
¶ 4. Thomas's version of events is markedly different. Thomas testified that he was a friend of Williams's. When he approached Bowser's car, he saw Williams and Minor standing outside the car with Bowser inside the vehicle. Williams asked Thomas for ten dollars, which Thomas did not have to give him. Bowser then handed the jewelry to Williams, and Williams moved toward Minor's house, handing the jewelry to Thomas. Thomas then walked onto Minor's porch with the gold jewelry. According to Thomas, Williams told Bowser that he did not need to get out of the car, and he raised his shirt and displayed what could have been a gun, pager, or something else; Thomas is not sure what Williams showed Bowser. Bowser exited the vehicle and approached Thomas and asked him to return the gold to him, which Thomas did. Bowser told Thomas that there was more gold, to which Thomas replied that he knew nothing about other jewelry. At this point, Bowser knocked on Minor's door, and asked if Williams were in the house. Minor replied in the negative, *1140 but invited Bowser to come in to see for himself. Bowser found Williams inside the house, and an argument over the jewelry began. At this point, a horn blew from outside presumably from the person who was to style Minor's hair, Dee Dee Davis, and Minor left the house. Williams then struck Bowser with the gun after asking Bowser not to approach him. Bowser then fell onto Williams, and both fell on the couch. Thomas says that at this time the handgun discharged. He glanced up and saw Minor run out of the door. Thomas knew it was Minor because of his hair. Thomas, too, retreated. Williams then began calling for Thomas to help him. Thomas turned around and saw Bowser on top of Williams. Thomas struck Bowser with his hands, but to no avail as the fight continued. Thomas struck Bowser with an ashtray. After this, the gun discharged a second time. Thomas then grabbed a pair of scissors and stabbed Bowser, causing Bowser to relent from the fight with Williams, at which time both Thomas and Williams retreated.
¶ 5. Finally, Williams took the stand in his own defense. Williams testified that Eddie Minor was his best friend, and he had spent the night with Minor on October 16. Williams said he knew Bowser from school, and that Thomas, too, was his best friend. Williams claimed that he and Minor were sitting on Minor's porch when Bowser and Thompson arrived. Bowser asked them if they wanted to buy some jewelry, to which Minor responded affirmatively. Bowser indicated that he would return in a few minutes, and he left. When Bowser returned, Williams and Minor went to Bowser's car to look at the jewelry. Minor inquired about rings, but Bowser informed Minor that he had none. According to Williams, Bowser showed Minor some other jewelry. Minor made Bowser an offer for some of the jewelry, which Bowser declined. At this point, Minor grabbed several pieces of jewelry and fled toward his house. Bowser exited the car in pursuit of Minor. Williams then took some of the jewelry from Bowser's car and gave it to Thomas. Williams then went into the house behind Minor and Bowser, followed by Thomas. Minor and Bowser began arguing. Williams testified that Bowser then pulled a gun on Minor. Williams testified that as Bowser was "coming up with it", Bowser fired the weapon and Williams grabbed it. Williams and Bowser then began struggling over the gun, with Bowser telling Williams that he was going to kill him. At this point, Minor had left the scene, after instructing Dee Dee Davis to leave as well because of the argument. Williams then called for Thomas's assistance. Thomas hit Bowser, and the gun discharged again, striking Williams in the left arm. Williams did not know when Minor was fatally wounded.
¶ 6. Following a trial, Williams was convicted for the murder of Minor and for the aggravated assault of Bowser. This appeal ensued.

ANALYSIS AND DISCUSSION

I. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A CONTINUANCE?
¶ 7. Williams's first assignment of error alleges that the trial court erred in disallowing his motion for a continuance of his case. After reviewing the record and considering the trial court's rationale for the denial of the motion, we disagree, and overrule this assignment of error.
¶ 8. Trial judges are vested with broad discretion in their decision to grant or deny continuances. Morris v. State, 595 So.2d 840, 844 (Miss.1991). Furthermore, we will not reverse a case based solely on a denial of a continuance unless the defendant shows not only an abuse of discretion, but also that injustice resulted from it. Id. The trial court is vested with reasonable latitude in docket management and granting of continuances. Thomas v. Hilburn, 654 So.2d 898, 903 (Miss.1995). The supreme court has consistently held *1141 that a trial court will not be found in error in denying a continuance if the defendant fails to follow the procedure outlined by statute and case law. Johnson v. State, 631 So.2d 185, 190 (Miss.1994) (citations omitted).
¶ 9. In the case sub judice, the trial court denied Williams's motion to continue because of speedy trial concerns raised by Williams in a motion to the court. Williams stated that he felt he had been the victim of a breakdown in communications with his attorneys. Specifically, Williams noted that he had been incarcerated for seventeen months and had met with Attorney Martin only three times, and had not seen Attorney Rosenthal until the day before the trial commenced. Williams said that Martin told him that she was unprepared to proceed to trial, and he felt she was ill prepared because he did not know the nature of his defense. The trial court responded that Williams had filed a motion for a speedy trial. Williams's first appointed counsel, Stanley Merritt, withdrew from the representation after Williams was arraigned. The case was set for trial on November 18, 1997; Attorney Martin was appointed to represent Williams by court order on October 8, 1997. Martin requested a continuance from the November 1997 trial setting, which was granted due to Martin's then recent appointment to the case. The case was reset for the March 1998 term, at which point Rosenthal was appointed to assist Martin, after a request from Martin. Finally, the case came for trial on April 7, 1998, and Williams moved for another continuance.
¶ 10. No record was developed as to the readiness of Martin and Rosenthal to proceed with the trial aside from Williams's naked assertion of what Martin told him. The trial court set out three reasons for his denial of the motion for continuance: the motion for speedy trial filed by Williams, the age of the case, and the fact that Williams was incarcerated. Given the broad discretion granted to our trial judges in determining the appropriateness of continuances as well as Williams's failure to demonstrate any injustice flowing from the denial of a continuance, we are unmoved by this argument.
II. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO DISMISS THE CHARGES OR IN THE ALTERNATIVE A DIRECTED VERDICT AS TO BOTH COUNTS, AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF?
III. WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR A DIRECTED VERDICT AT THE CLOSE OF THE APPELLANT'S CASE?
IV. WHETHER THE EVIDENCE WAS SUFFICIENT AS A MATTER OF LAW?
¶ 11. Williams's second, third, and fourth assignments of error all challenge the sufficiency of the evidence. Such challenges require our consideration of the evidence before the trial court when made; therefore, this Court must review the ruling on the last occasion the challenge was made at the trial level. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). This occurred when the trial court overruled Smith's motion for JNOV. The Mississippi Supreme Court has stated, in reviewing an overruled motion for JNOV:
[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [Williams's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded *1142 jurors could only find the accused not guilty.
Id. (citations omitted).
¶ 12. There was sufficient evidence adduced at trial to support the conviction in this case. As set forth in our recitation of facts above, though the testimony was in competition, and three eyewitnesses gave different versions of what exactly occurred, we cannot say that, on the evidence presented, the jury could have only found Williams not guilty of the crimes charged. Accordingly, this assignment of error is without merit and is overruled.

V. WHETHER THE APPELLANT WAS DENIED A FAIR TRIAL AND EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION?
¶ 13. Williams's fifth assignment of error maintains that he received ineffective assistance of counsel for three reasons: a breakdown in communications between him and his attorneys, his attorneys's failure to subpoena an allegedly material witness, and his attorney's saying in closing argument that Williams "colored the truth" in his testimony. On review of the record, we are unmoved by this assignment of error and overrule the same.
¶ 14. Mississippi has adopted the Strickland v. Washington, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) standard for examining ineffective assistance of counsel claims. Shabazz v. State, 729 So.2d 813, 821 (Miss.Ct.App. 1998) (citing Eakes v. State, 665 So.2d 852, 872 (Miss.1995)). To prevail on such a claim, a defendant must show that his attorney's performance was so deficient and that the deficiency was so substantial that he or she was deprived of a fair trial. Id. The defendant must prove both elements. Id. (citing Brown v. State, 626 So.2d 114, 115 (Miss.1993); Wilcher v. State, 479 So.2d 710, 713 (Miss.1985)). In any case presenting an ineffective assistance of counsel claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Id. (citing Foster v. State, 687 So.2d 1124, 1129 (Miss.1996)). This is measured by a totality of the circumstances, and thus, the reviewing court must look at counsel's over-all performance. Id. (citing Taylor v. State, 682 So.2d 359, 363 (Miss.1996)). There is no constitutional right to errorless counsel. Id. (citing Foster, 687 So.2d at 1130). "Judicial scrutiny of counsel's performance must be highly deferential." Id. (citing Strickland, 466 U.S. at 689, 104 S.Ct. 2052). A strong presumption holds that counsel's performance falls within the range of reasonable professional assistance. Id. To overcome this presumption, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citing Schmitt v. State, 560 So.2d 148, 154 (Miss.1990)) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
¶ 15. First, Williams assigns as ineffective assistance the fact that there was a breakdown in communications between himself and his defense counsel, citing infrequent consultation with his attorneys and his not being provided a copy of discovery for his personal use. This is without merit, as Williams fails to articulate why there exists a reasonable probability that but for the alleged breakdown in communications with his attorneys, the result of his case would have been different. Second, Williams charges that his attorneys's failure to subpoena Dee Dee Davis and to secure her presence in court demonstrates his denial of ineffective assistance. We, too, are unmoved by this argument based on Williams's own testimony regarding Davis's knowledge of the crime. On direct examination, Williams testified:

*1143 By Counsel Martin: Okay. Now, before that, let me backup [sic]. When you go into the house, you said that Darius and Eddie were arguing
Williams: Yes, ma'am.
By Counsel Martin:over the jewelry. Did anybody else show up?
Williams: Yes, ma'am.
By Counsel Martin: Who?
Williams: A girl by the name of Dee Dee. I don't really know her real name at this point in time.
By Counsel Martin: What was she doing there?
Williams: She came to do Eddie's hair.
By Counsel Martin: And she came up into the house?
Williams: Yes, ma'am.
By Counsel Martin: And did she stay?
Williams: No, she didn't stay. Eddie told her to leave.
By Counsel Martin: Why was that?
Williams: Because it waswe was arguing over the jewelry.
By Counsel Martin: And what did she do?
Williams: She left.
According to Williams later testimony, the above scenario took place before either of the shots were fired. Thus, it is evident by Williams's own testimony that Davis could have offered no assistance to the jury in corroborating Williams's version of events regarding the shooting and the assault even had she testified. Again, Williams failed to satisfy the high burden of Strickland and its Mississippi progenies.
¶ 16. Finally, Williams points to the closing argument delivered by Attorney Rosenthal as an instance of ineffective assistance of counsel. In his closing argument, Rosenthal argued to the jury:
We really get down to, like Ronnie [prosecutor] said, three witnesses [Williams, Thomas, and Bowser] that you heard, and quite frankly, I think that everyone colored the truth. That's what I believe, and I hope you all feel the same, but there's enough truth in what all three of them said that the twelve of you can put together and figure out what really did happen, and I hope you do that. I am going to tell you what I think happened, the way I put it together. I may be wrong. They're [the prosecution] going to say I'm wrong, but it's reasonable.
Williams points to Rosenthal's reference that he believed Williams, as well as Bowser and Thomas, "colored the truth," arguing that this statement caused the jury to disbelieve all of Williams's testimony. This is absolutely devoid of any merit. In Faraga v. State, 514 So.2d 295, 307 (Miss. 1987), Faraga was charged with capital murder, and his counsel during jury argument conceded that Faraga was likely guilty of murder, but not capital murder. The supreme court overruled this alleged claim of ineffective assistance of counsel, noting: "[o]f course, no attorney representing a client who has pleaded not guilty should concede in his oral argument to a jury that his client was in fact guilty of the crime charged in the indictment." Id. (citations omitted). However, as a tactical decision, certain points may be conceded, such as the defendant's possible coloring of the truth, in the foremost effort to set forth the most convincing argument given the circumstances in which the attorney finds his client. Id. at 308.
¶ 17. On reviewing all the testimony, we find Rosenthal's statement that Williams possibly lacked candor in his testimony to have been the best argument that Rosenthal could have made given the competing testimonies of Bowser and Thomas against Williams. Williams fails to demonstrate that there exists a reasonable probability that but for Rosenthal's statement regarding his candor, the verdict of the jury would have been different.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF CONVICTION OF COUNT I OF MURDER AND SENTENCE OF LIFE IMPRISONMENT *1144 IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS; COUNT II OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH SAID SENTENCES TO RUN CONCURRENTLY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST ADAMS COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, AND THOMAS, JJ., CONCUR.
MOORE, J., NOT PARTICIPATING.