807 So.2d 452 (2001)
James H. WASH a/k/a James Hugger Wash, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01079-COA.
Court of Appeals of Mississippi.
July 31, 2001.
Rehearing Denied October 16, 2001.
Certiorari Denied February 14, 2002.
*453 Ross Parker Simons, Attorney for Appellant.
Office of the Attorney General by Scott Stuart, Jackson, Attorney for Appellee.
Before KING, P.J., PAYNE, and MYERS, JJ.

PROCEDURAL HISTORY
PAYNE, J., for the Court:
¶ 1. James Wash was convicted of aggravated assault and armed robbery in George County Circuit Court on February 9, 1999. Judge Kathy King Jackson sentenced Wash to twenty years in the custody of the Mississippi Department of Corrections for the aggravated assault and a consecutive forty years without parole for the armed robbery. Wash made motions for a new trial and for reconsideration of the sentence, which were denied. Feeling aggrieved, he appeals the judgment. This Court now affirms.

FACTS
¶ 2. On or about July 19, 1997, Wash and Adam Parimon flagged down Chris Hale and asked for a ride to a car wash. After reaching the car wash, Wash and Parimon asked Hale to take them somewhere else. Hale refused, stating that he did not have time. Parimon pulled a gun out and shot Hale in the head. He fell out of the truck and tried to crawl under it. Hale was shot twice more. The State contends that Wash and Parimon drove off in Hale's truck. However, Wash testified that Parimon did the shooting and drove off in Hale's truck. Wash testified that when the first shot was fired, he jumped out of the truck and ran away on foot.
¶ 3. Wash was represented by William T. Bailey, Sr., public defender for George County. Wash's case had been set for February 3, 1999, and notice was mailed to Bailey on December 15, 1998. The case was re-set by the court from the bench on Friday, February 5, 1999, for Monday, February 8, 1999. Bailey moved for a continuance on Wash's behalf. When the court asked Bailey if he would be ready by Monday, Bailey said he would try, but that he would rather the trial be passed. The trial court recognized that the prosecutors did not work on weekends and told Bailey that he had to notice the State of his witnesses that day. The court stated its concern about Bailey's being able to make contact with defense witnesses over the weekend before the trial.

ISSUES PRESENTED

STANDARD OF REVIEW
¶ 4. Wash makes the following assignments of error:
I. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING WASH'S MOTION TO CONTINUE, IN THAT THE DENIAL FORCED *454 DEFENSE COUNSEL INTO OMISSIONS WHICH CRITICALLY PREJUDICED THE MINOR DEFENDANT.
II. THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING A SIXTEEN YEAR OLD TO SIXTY YEARS IN THE PENITENTIARY. ALTERNATIVELY, NOT ENOUGH APPEARS IN THE RECORD TO ENABLE THE REVIEWING COURT TO DETERMINE IF THE SENTENCING COURT ABUSED ITS DISCRETION. IN EITHER CASE, THIS COURT SHOULD REMAND FOR AN ADEQUATE SENTENCING HEARING.
III. THE TRIAL COURT ERRED IN SENTENCING WASH TO A TERM OF YEARS THAT IS NOT REASONABLY EXPECTED TO BE LESS THAN HIS LIFE EXPECTANCY.
IV. WASH, A MINOR, WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL PRE TRIAL, AT TRIAL AND IN SENTENCING AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, SECTIONS 14 AND 26 OF THE MISSISSIPPI CONSTITUTION.
IV.A(1) WASH WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL COUNSEL FAILED TO FILE A MOTION TO DISMISS DUE TO A VIOLATION OF MISS. CODE ANN. 99-77-1, COMMONLY KNOWN AS THE 270 DAY RULE.
IV.A(2) WASH WAS DENIED EFFECTIVE ASSISTANCE DUE TO COUNSEL'S FAILURE TO RELAY TO HIM A PLEA BARGAIN OFFERED BY THE STATE.
¶ 5. The grant or denial of a continuance lies within the sound discretion of the trial court. This court has recently cited the Mississippi Supreme Court where it held, "we will not reverse a case based solely on a denial of a continuance unless the defendant shows not only an abuse of discretion, but also that injustice resulted from it." Williams v. State, 751 So.2d 1137(¶ 16) (Miss.Ct.App.1999).
¶ 6. The standard of review for ineffective assistance of counsel is set out in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

DISCUSSION

I. MOTION TO CONTINUE
¶ 7. Wash argues that the trial court's denial of his motion to continue denied him effective assistance of counsel in pre-trial hearings, during his trial, and at his sentencing. Wash's last noticed trial date was for February 3, 1999. As the trial date passed, the George County court term ended and Wash assumed his case would be reset for trial during the next term, as he claims is the custom and practice. However, the court decided to extend the term in order to try Wash and gave verbal notice of such to Wash's counsel on Friday, February 5, 1999. The court reset the case for Monday, February 8, 1999. Wash's counsel expressed his surprise and immediately requested a continuance.
*455 ¶ 8. Wash contends that there is no way to tell from the record why his trial was given such urgency. He argues that any claim of urgency is spurious when, more than a year after his trial, no action had been taken on the three adult co-defendants in this case. When action was finally taken on two of the adult co-defendants, it was to nolle prosequi them.
¶ 9. Wash points out the case of Clay v. State, 757 So.2d 236 (Miss.2000), in which the court reversed and remanded conviction because the judge, in effect, gave Clay a choice between waiting in jail until he could go to trial with counsel, or immediately proceeding to trial pro se. Id. at (¶ 22). Clay had asked for a couple of days to secure counsel, but the trial court refused because she thought he was intentionally delaying his trial. Id. at (¶ 8). Wash argues that he was denied adequate assistance of counsel when he was forced to proceed to trial with only two weekend days to prepare, on a date for which he had not been properly noticed, and his counsel having just completed an unrelated four-count sexual battery case immediately preceding his case.
¶ 10. Wash also points to the case of Cruthirds v. State, 190 Miss. 892, 2 So.2d 145, 146 (1941), in which the court stated:
Dispatch of Court, saving of costs in their operation, speedy trials are commendable in the trial judges, but zeal in these respects must have due regard for the rights of defendants. The right is more valuable than the saving.
The court in Hughes v. State, 589 So.2d 112 (Miss.1991), reiterated the sentiments of the Cruthirds court when it cited a Florida Supreme Court case which stated:
A judicial trial becomes a farce, a mere burlesque, and in serious cases a most gruesome one at that, when a person is hurried into a trial upon an indictment charging him with a high crime, without permitting him the privilege of examining the charge and time for preparing his defense. It is unnecessary to dwell upon the seriousness of such error; it strikes at the root and base of constitutional liberties; it makes for a deprivation of liberty or life without due process of law; it destroys confidence in the institutions of free America and brings our very government into disrepute.
Id. at 116 (citing Coker v. State, 82 Fla. 5, 89 So. 222 (1921)). Wash also argues that the court in Lambert v. State, 654 So.2d 17 (Miss.1995), intimates that various elements of prejudice can combine to elevate the denial of a continuance to an abuse of discretion:
This case does not involve just a single reason for the continuance but several. Standing alone, wanting to hire a different attorney would not warrant a continuance. This factor when combined with the extremely short period of time between the arraignment and the first trial, the "court appointed" counsel's previous trial commitments, the failure of the State to supply discovery prior to trial, and the problems of the multi-count indictment clearly demonstrates an abuse of discretion which resulted in Lambert not being afforded a properly prepared defense. Counsel's representations to the court that he was not adequately prepared should have been given greater weight. While there may be no demonstrative affidavit from Lambert of evidence and prejudice against him and while there may be no proof as is required under Miss.Code Ann. § 99-15-29 (Supp.1972), it staggers the imagination that in the circumstances outlined above competent counsel could be expected to proceed to trial and provide a competent defense for any defendant. *456 Id. at 22. Wash claims the denial of his motion to continue set in motion a course of events resulting in an unfair trial and sentencing of a sixteen-year-old who was either fourteen or fifteen at the time of the crime for which no other co-defendants have been held responsible. However, Lambert was arraigned and tried within a week, while in the case sub judice, Wash was arraigned over a year before the trial and his attorney received notice of the original trial date a month and a half in advance. As in Lambert, Wash's attorney had a previous trial commitment to represent a defendant on a four-count indictment, and that trial was held the two days previous to Wash's original trial date. However, Lambert was tried for a charge different from those under which he was indicted. Wash alleges that Bailey, the court and the State had conversations as to whether any of them would be available to try Wash's case on February third. Apparently it was agreed that this case would not be tried on the third, but the case was not reset at the time that such a determination was made. Wash argues that he and Bailey expected the case to be reset for the next term, as is the norm, and were quite surprised when the court extended its term to hear Wash's case.
¶ 11. The State argues that Wash has demonstrated no error in the trial court's denial of a continuance. The State claims that counsel put on a well-prepared case for the defense by attacking the evidence linking him to the crime and by eliciting testimony from Wash and other witnesses who corroborated Wash's testimony that he left on foot, spent the night at Luke Silas's house, and asked for a ride to McLain the next day, thus mitigating his culpability in the assault and armed robbery. The State opines that Bailey presented the best defense available to Wash in light of the undisputed facts.
¶ 12. The State also argues that counsel for the defendant advised the court that Wash had been more forthcoming at the hearing on February 5, 1999, than he had in the year prior to the hearing. The State then argues that Wash cannot claim the denial of a continuance denied him a fair trial if he did not cooperate with his counsel until the day of the trial. The State contends that if Wash's counsel could have been ready for the previously noticed trial date of February 3, he would still have been ready at the later date. The State argues that "unless manifest injustice appears to have resulted from the denial of the continuance, this court should not reverse." Johnson v. State, 631 So.2d 185, 189 (Miss.1994). The State maintains that Wash had a fair trial which protected his rights to due process, and a manifest injustice was not caused by the denial of Wash's request for a continuance.
¶ 13. As stated by Wash, his attorney was involved in a trial on February first and second, the days immediately preceding Wash's original trial date. The State did not deny that the discussions had been held as to the availability of the court or the district attorneys to hear Wash on the original date, nor that the case was not reset until February fifth. The court had concerns over Bailey's ability to prepare for trial over two weekend days, yet chose to extend the term of court to hear Wash's case, which Wash contends is not the normal practice. However, the facts show that Wash's attorney had notice of the February third setting for over a month and a half, and, as the State argues, if he was prepared by that date, he should still have been prepared five days later. Wash has not shown a manifest injustice due to the denial of his request for continuance. Therefore, this issue is affirmed.

II. SENTENCING

III. TERM OF YEARS
¶ 14. Wash contends that the holding in Davis v. State, 724 So.2d 342 (Miss.1998), *457 tells us that the reviewing court does not have to find that the trial court abused its discretion in sentencing. Instead it must only find that there is not enough in the record to make the determination of whether or not the trial court abused its discretion. The Davis court stated:
We simply remand this case for re-sentencing because we do not have enough information before us to determine if the trial judge abused his discretion in sentencing Davis to sixty years in the custody of the Mississippi Department of Corrections.
Id. at 346. Wash claims that neither the court nor the defendant placed enough information on the record to allow this Court to make an informed decision on the propriety of the sentence. Wash contends that the court offered no justification for the harsh sentence, stating what "might have happened" rather than what did happen. No inquiry was made by the court as to Wash's correct age, youth court record, mental and physical health, nor any other matter relevant to sentencing.
¶ 15. Wash points to White v. State, 742 So.2d 1126 (Miss.1999), and White v. State, 761 So.2d 221 (Miss.Ct.App. 2000), in which the courts remanded the cases for re-sentencing because the trial court gave no specific explanation for sentencing the appellants to the maximum penalties. Wash contends that the trial court abused its discretion in sentencing him to sixty years, and asks that the case be remanded for re-sentencing. Even if this Court does not find an abuse of discretion, Wash argues that his case should be reversed and remanded due to a record lacking enough information to permit an informed review. The State distinguishes the White cases from the case sub judice in that they involved maximum sentences, whereas Wash was not given the maximum sentence.
¶ 16. The State argues initially that the sixty years is a combination of two sentences, twenty years for aggravated assault and forty years for armed robbery. The court was required to sentence Wash for the armed robbery to a term reasonably expected to be less than his life expectancy. The State contends that forty years fits that category for a sixteen-year-old according to the mortality tables, and that the sentence for the armed robbery is to be imposed without respect to the sentence for the aggravated assault. The total of the sentences may exceed the actuarial life expectancy of the defendant. Erwin v. State, 557 So.2d 799, 803 (Miss. 1990). Therefore, the relevant question is whether a term of forty years terminates beyond Wash's life expectancy.
¶ 17. The State argues that the Court will not review the sentence if it is within the limits prescribed by statute. Reynolds v. State, 585 So.2d 753, 756 (Miss.1991). The rule for sentencing a defendant to a term when the jury could have imposed a life sentence is set out by Stewart v. State, 372 So.2d 257 (Miss.1979), which held:
[T]he trial court will make a record of and consider all relevant facts necessary to fix a sentence for a definite term [of years] reasonably expected to be less than life. The court should consider the age and life expectancy of the defendant and any other pertinent facts which would aid in fixing a proper sentence.
Id. at 259. The State contends that the trial court gave its justification for the sentence by its comments concerning the seriousness of the crimes and the fact that Chris Hale could have died, as well as its comments about listening to testimony for two days.
¶ 18. Wash contends that a sixty-year sentence exceeds his reasonable life expectancy, and should be reversed and remanded under Stewart. He argues that conditional *458 release will not be available to him on the first twenty-year sentence because he has another consecutive sentence to follow. This means he will serve the full twenty years, then begin to serve the forty-year sentence for which parole is not allowed. He will, therefore, serve a total of sixty years, which is 1.7 more years than his reasonable life expectancy. Wash states that there are conflicting reports in the record as to his age, and no mention as to how much time he served in jail before trial. He claims that these missing variables place the sentencing hearing squarely within the Presley v. State, 474 So.2d 612, 620 (Miss.1985), court's definition of an inadequate sentencing hearing.
¶ 19. The State argues that Presley is distinguishable from this case in that Presley brandished a knife after being caught stealing meat. He finally dropped the meat and ran. Id. at 614. In this case, the State contends that Wash and his partner shot Hale with no warning, then shot him twice more after he fell. They did not use deadly force to intimidate, but to totally disable so they could steal Hale's truck.
¶ 20. The State contends that according to Erwin, 557 So.2d at 803, when a series of violent crimes is involved, the sentences should be imposed without respect to each other. Id. In that case, both counts charged against the defendant carried a possible life sentence. Id. The jury could not agree on a life sentence for either count. Id. However, the court found that the total of the sentences may exceed the actuarial life expectancy of the defendant. Id. The rule prohibiting a sentence beyond the defendant's life expectancy applies only to the armed robbery in the case sub judice, and not the aggregate sentence. The armed robbery sentence was for forty years, which does not exceed Wash's reasonable life expectancy. The State argues that the court should be able to rely upon Wash's own statement about his age, and contends that the sentence for armed robbery is so much within Wash's life expectancy that time already served was irrelevant. Finally, the State argues that the use of pre-sentence investigations and reports is discretionary with the trial judge. Hart v. State, 639 So.2d 1313, 1320 (Miss. 1994).
¶ 21. Wash has not shown that the trial court abused its discretion in the sentences imposed. Therefore, this Court now affirms the sentences.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 22. Wash claims that the following actions or inactions were caused or exacerbated by the trial court's denial of Wash's motion for continuance.

1. Suppression Hearing

¶ 23. Wash claims that his counsel was unable to investigate and properly prepare a motion to suppress his confession statements. To effectively present the suppression motion, Wash argues that his counsel needed time to find and interview the officers who were involved with Wash's statements, as well as Adam Parimon and the other adult co-defendants.
¶ 24. The State argues that no constitutional violation occurred when Wash gave his statements, and that additional witnesses would not have resulted in suppression of the statements. Wash's brother, Andrew, was called to testify at trial, but invoked his Fifth Amendment right against self-incrimination. The State contends that any of the witnesses Wash suggests would have testified on his behalf would also have invoked their Fifth Amendment rights. Wash does not claim additional witnesses would have proved inducement by law enforcement officers. Therefore, Wash has failed to show error.

*459 2. Motion to Transfer

¶ 25. Wash argues that trial counsel was remiss in not filing a motion to transfer to Youth Court before a jury was empaneled, and the quick re-setting of the case was partly to blame for the motion not being researched, written, filed and argued. However, paragraph seven of the statute upon which Wash relies states that "no offense involving the use or possession of a firearm by a child who has reached his fifteenth birthday and which, if committed by an adult would be a felony, shall be transferred to the youth court." Miss. Code Ann. § 43-21-159(7) (Rev.2000). Therefore, the issue of Wash's age at the time of the event is critical where this argument is concerned. Wash stated that he was fifteen, while he now argues that he may have been fourteen. The State has already argued that the trial court should be able to rely on Wash's statement concerning his age. If so, this issue fails because the statute would not apply to Wash for transfer to youth court. This argument is without merit.

3. Pre-Sentence Investigation

¶ 26. A motion for a pre-sentence investigation (PSI) was never filed, requested ore tenus, or heard, and Wash claims this was partly due to the trial court's insistence on a hastily re-set trial. Wash argues that his rights were critically compromised by failure of his counsel to present adequate pre-sentencing information to enable the court to make an informed decision on the proper sentence in this case.
¶ 27. The State argues that Wash does not cite any authority holding that a failure to request a PSI is unreasonable, thus failing to prove the first prong of the Strickland test. The State also argues that Wash does not specifically say what such an investigation would have shown, nor does he demonstrate that, in all probability, the outcome would have been different had counsel requested a PSI. The failure to request a PSI is not, of itself, a reversible error. Therefore, this issue is without merit.

4. Inadequate Sentencing Hearing

¶ 28. Wash argues that his counsel was unprepared to offer mitigation evidence when sentence was passed. Wash contends that he would have spoken on his own behalf had he been advised of his right to do so. Wash also argues that trial counsel's performance was deficient under the Strickland test. Failure to properly investigate and conduct a suppression hearing and failure to present mitigation for a sixteen-year-old subject to life imprisonment, Wash contends, is below the range expected of reasonable, professional competent assistance of counsel. The State contends that the question is whether or not Wash presented evidence in his argument that would have, in all probability, resulted in the judge imposing a lesser sentence had it been presented to the sentencing judge. While Wash speculates that mitigation would have resulted in a lesser sentence, the State claims that Wash did not show what the mitigating evidence would have been.
¶ 29. This Court stated in the recent case of Robinson v. State, 784 So.2d 966 (Miss.Ct.App.2000) (cert. denied May 17, 2001), that because the defendant "failed to inform the Court of what these mitigating factors may be, it is impossible to say that defense counsel was in error in not arguing these supposed factors." Id. at 971 (¶ 12). Robinson had argued that his counsel was deficient in the sentencing phase of trial by not presenting the court with mitigating factors surrounding his crime. Id. In the case sub judice, this Court cannot say that Wash has shown his *460 counsel to be deficient under the Strickland test for failing to present mitigating factors. Nevertheless, Wash argues under Gary v. State, 760 So.2d 743 (Miss.2000), that although the trial court had to consider an alternative sentence, a different outcome was not required. The error and prejudice was in trial counsel's failure to suggest the alternative sentencing. The Gary court stated:
There is a reasonable probability, had the trial counsel brought the alternative sentencing under the Youth Court Act to the court's attention, that the outcome of the proceeding would have been different. Gary was 17 and had no prior offenses. Had trial counsel mentioned, and the trial court accepted, the alternative sentencing, Gary would have spent at most one year in the county jail.
Id. at 754 (¶ 35) (emphasis added). Wash contends that the error and prejudice in the case sub judice is his counsel's failure to suggest a lesser sentence or to offer any mitigation at the sentencing hearing. Under the reasoning of Gary, Wash may not be required to meet Strickland in this instance. However, as discussed in the conclusion, the issue of ineffective assistance of counsel should be considered under the post-conviction-relief statute.

IV. A(1) 270-DAY RULE
¶ 30. In a supplement to Wash's brief, he contends that he was denied effective assistance of counsel because his attorney failed to file a motion to dismiss due to a violation of Miss.Code Ann. 99-17-1, commonly known as the 270-day rule. Wash was tried 375 days after his arraignment, which exceeds the statutory limit by 105 days. The only mention of a continuance in the record was the one requested by Wash's counsel long after the 270-day limit had run, which was denied. Wash contends that had the motion been filed, the State could offer nothing from the record to excuse the violation.
¶ 31. The State did not file a response to this supplemented issue. In a similar case, this Court stated:
The first issue to be resolved is whether a defense attorney's failure to counsel his client regarding the availability of this potential speedy trial bar to prosecution would constitute ineffective assistance. We determine that it would. "If counsel's failure to move for a speedy trial discharge is the result of actual incompetence on the attorney's part and results in prejudice to the defense, defendant is entitled to a new trial." People v. Stanley, 266 Ill.App.3d 307, 204 Ill.Dec. 605, 641 N.E.2d 1224, 1227 (1994).
McVeay v. State, 754 So.2d 486 (¶ 11) (Miss.Ct.App.1999) (emphasis added). However, the record is deficient for this Court to determine whether the failure to move for a speedy trial dismissal was due to "actual incompetence on the attorney's part." As stated below, this issue may be considered under the post-conviction-relief statute.

IV. A(2) FAILURE TO RELAY A PLEA BARGAIN
¶ 32. Wash argues that he was denied effective assistance of counsel because Bailey failed to inform him of a plea bargain offered by the State. The record reveals a disagreement about whether a plea bargain was offered. Bailey contended before the court that there was no plea discussion, while the two State's attorneys told the court that there had been a plea negotiation. Whether a plea offer was made or not, Wash testified that trial counsel had never informed him of the maximum penalties for armed robbery and aggravated assault, which is critical information in any plea discussion. "In order for a guilty plea *461 to be voluntarily and intelligently entered, a defendant must be advised about the nature of the crime charged against him and the consequences of the guilty plea." Banana v. State, 635 So.2d 851, 854 (Miss. 1994) (citation omitted).
¶ 33. From the record at that hearing, the judge did not make a finding of fact on the issue of a plea bargain or its communication to the defendant. Sufficient facts do not presently appear in the record by which the necessary determinations can be made as to (a) whether the State made an offer of a sentence recommendation in exchange for a guilty plea, (b) whether or not, if such offer was made, it was relayed to Wash for his consideration, or (c) whether, accepting as true that an offer was made to defense counsel but not relayed to him by his client, there was a substantial likelihood of a different outcome of the proceeding had the offer been presented to Wash.

CONCLUSION
¶ 34. The Mississippi Supreme Court, in Read v. State, 430 So.2d 832, 841 (Miss. 1983), set out the procedural rules for raising ineffective assistance of counsel issues on direct appeal. The court directed that the appellate court should conduct a thorough review of the record to see whether a determination can be made from the record that counsel's performance was constitutionally substandard. Id. "Assuming that the Court is unable to conclude from the record that defendant's trial counsel was constitutionally ineffective," the court is directed to consider any other issues raised in the appeal and, assuming no reversible error is found among them, to affirm "without prejudice to the defendant's right to raise the ineffective assistance of counsel issue via appropriate post-conviction relief proceedings." Id.
¶ 35. The record is not sufficiently clear to determine whether Wash's counsel was deficient. Therefore, the convictions for aggravated assault and armed robbery are affirmed on this direct appeal without prejudice to Wash's right to pursue the matter in a separate proceeding brought under the State's post-conviction-relief statute. In his motion for post-conviction relief, Wash should present facts to justify an evidentiary hearing on the matter, at which he may fully disclose the substance of his claim. The appropriate disposition of this case should then be determined by the trial court.
¶ 36. THE JUDGMENT OF THE GEORGE COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS; COUNT II, ARMED ROBBERY AND SENTENCE OF FORTY YEARS TO RUN CONSECUTIVELY WITH SENTENCE IN COUNT I, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GEORGE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS AND CHANDLER, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, J.
IRVING, J., Dissenting:
¶ 37. This is a case of a fifteen year-old defendant[1] being sentenced to sixty years in the Mississippi Department of Corrections for armed robbery and aggravated *462 assault. The majority finds that the record is insufficient to determine whether Wash was denied effective assistance of counsel as a result of his counsel's failure to move for a dismissal of the charges after the State failed to prosecute the charges within 270 days from the date of Wash's arraignment. The majority also pretermits the issue of whether Wash was denied effective assistance of counsel as a result of his counsel's failure to relay the terms and conditions of a plea bargain agreement to him. As to the first charge of ineffective assistance of counsel, the majority points out that Wash may raise the issue in a post-conviction relief motion. With respect to my colleagues in the majority, I dissent because I believe Wash was denied effective assistance of counsel and that the record sufficiently supports such a conclusion.
¶ 38. In discussing whether Wash's counsel relayed the contents of the plea bargaining agreement to Wash, the majority says:
[T]he judge did not make a finding of fact on the issue of a plea bargain or its communication to the defendant. Facts do not presently appear in the record by which the necessary determinations can be made as to (a) whether the State made an offer of a sentence recommendation in exchange for a guilty plea, (b) whether or not, if such offer was made, it was relayed to Wash for his consideration, or (c) whether, accepting as true that an offer was made to defense counsel but not relayed to him by his client, there was a substantial likelihood of a different outcome of the proceeding had the offer been presented to Wash.
Majority Opinion at (¶ 33).
¶ 39. On the issue of whether Wash received ineffective assistance of counsel, the record reveals, on direct examination of Mr. Wash, the following testimony which I find to be relevant and sufficient to conclude that Wash indeed received ineffective assistance of counsel:
Q. And how long were you in jail before you were tried?
A. I stayed in jail about ten and a half months.
Q. Okay. And did I visit with you while you were in jail?
A. Once or twice.
Q. Okay. And did we get down to the details of what happened?
A. Not really.
Q. Okay. Your case was set and continued a number of times?
A. Sir?
Q. Your case was set and continued a number of times, or do you know?
A. I really don't know.
Q. Okay. And when I say, "Did I talk with you about the details of what you were charged with?" what do I mean by that? Do you understand what details means?
A. Yes, sir, I understand the meaning of the details. Are you asking me when or did you or
Q. What happened? What were the circumstances? Did I ever ask you, in detail, what you did and was involved in?
A. No, sir, not really.
Q. Okay. Did I ever?
A. Not that I can remember.
* * * * * *
Q. Okay. And, up until that time [the Friday before trial on Monday], had I told you what number of years you were facing?

A. No. sir.

Q. Okay. You found out when you got in the courtroom and the judge sentenced you?

*463 A. Yes, sir.

Q. Okay. So you're telling the Court, as far as knowledge of what was going on in your case, you didn't have no knowledge, did you?

A. No, sir.

Q. Because I hadn't got with you, had I?

A. No sir.

Q. And did I tell you what the maximum penalty was for armed robbery?

A. No, sir, you never did.

Q. Did I tell you what maximum penalty was for aggravated assault?

A. No, sir.

* * * * * *
Q. And you were how old onlet's see, on July the 19th, 1997, you were how old?
A. Fifteen years old.
(emphasis added).
¶ 40. On cross-examination, the record reveals the following exchange between Wash and Mr. Martin, the assistant district attorney:
Q. Mr. Wash, if I understood you correctly, you were in jail for approximately ten, ten and a half months?
A. Yes, sir.
Q. And during that time Mr. Bailey did come visit with you?
A. Once or twice.
* * * * * *
Q. Did you ever at any time refuse to meet with Mr. Bailey?
A. No, sir.
Q. Did you at any time ever refuse to discuss the details of your case?
A. No, sir.
Q. And, in February of 1999, or any time, do you remember Mr. Bailey coming to you and discussing with you a plea offer that the State of Mississippi made that you would plead guilty and, in return, the State of Mississippi would recommend to this Court a specific term of years for you to serve?

A. No, sir.

Q. You don't remember Mr. Bailey ever discussing any plea negotiations with you?

A. No, sir.

Q. The possibility of you pleading guilty, in exchange for a recommendation to the Court of you serving ten years, or something along those lines?

A. No, sir.

(emphasis added).
¶ 41. During an in camera discussion on Wash's motion for a new trial, the trial court, counsel for Wash, and the State attempted to recall what was said, during the trial of another case involving Wash's counsel, about whether Wash's case would be tried or continued. The pertinent portion of that exchange follows:
BY THE COURT: And, to be honest with you, the Court's impression was, if it wasn't going to be tried, there was a possibility of a plea. That was the reason, if it wasn't going to be tried, that would be why. That's what I thought.
MR. BAILEY: There was no plea discussions in it.
BY THE COURT: Well, see, I don't know that. That's just my impression. I don'tI'm not saying I recall anything about plea negotiations.

BY MS. HASBROUCK: There was.

BY MR. MARTIN: There was a plea negotiation.

BY THE COURT: But I recall saying, "Do y'all think y'all can work this out?" And everybody said we might. And that *464 was the last I heard until it was time to try it.
BY MS. HASBROUCK: And that was during the Sanchez case that we had that, because I was up here then, Your Honor. Whether there was a possibility of it pleading out or it was going to definitely go to trial. Remember? Because, Your Honor, because Mr. Bailey had indicated that the plea recommendation was twenty years. And I believe my recommendation had some time suspended. Do you recall that? Because we had talked about that.
BY THE COURT: Not specifically. But I doI thought it had something to do with plea negotiations. That that was the only question as to whether it would be tried on Monday, not anything else.
(emphasis added).
¶ 42. Apparently relying upon the exchange quoted above, the majority says the "record reveals a disagreement about whether a plea bargain was offered. Bailey contended before the court that there was no plea discussion, while the two State's attorneys told the court that there had been a plea discussion." Majority Opinion at (¶ 32). I believe the majority misinterprets the colloquy between the court and counsel. What Bailey was saying is that the discussion about whether Wash's case was to be tried the following week was not dependent upon the success or failure of plea discussions. In other words, when the discussion was held concerning whether Wash's trial would go forward the next week, nothing was said about the pending plea offer.
¶ 43. There can be no doubt that the trial court considered and ruled on Wash's contention that he received ineffective assistance of counsel. This is what the record reveals the court said:
Mr. Bailey, you've described here to the CourtI assume what you're calling inadequate assistance of counsel. But I was here for the trial. You had your witnesses. They testified. You cross-examined, vigorously, the State's witnesses. You had a motion to suppress. And I certainly do not find that you were incompetent counsel in any way in the defense of Mr. Wash. I have not heard anything that would convince me that a new trial is necessary, and your motion will be denied.
¶ 44. I believe this record supports the conclusion that the State offered to Wash's counsel a plea agreement wherein Wash would plead guilty in exchange for a sentence of twenty years with ten years suspended. Further, I believe the record is sufficient to conclude that Wash's counsel did not discuss the plea offer with Wash. Finally, I believe that it is reasonable to conclude that any defendant, and certainly a fifteen year old defendant, facing twenty years plus life in prison,[2] is likely to accept a plea offer of twenty years with only ten to serve. Therefore, I believe Wash's conviction should be reversed and remanded for a new trial on the basis that he received ineffective assistance of counsel.
BRIDGES, J., JOINS THIS SEPARATE OPINION.
NOTES
[1] According to Wash's testimony, he was fifteen years old when the offenses were committed.
[2] The maximum penalty for armed robbery is life in prison if fixed by the jury, and the maximum penalty for aggravated assault is twenty years.